No. 16-2881

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

DAVID DANON,

Plaintiff-Appellant,

v.

VANGUARD GROUP, INC.,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE* IN SUPPORT OF THE APPELLANT

SANKET J. BULSARA
Deputy General Counsel

MICHAEL A. CONLEY
Solicitor

THOMAS J. KARR
Assistant General Counsel

STEPHEN G. YODER
Senior Litigation Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532 (Yoder)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iv

STATEMENT OF THE ISSUE.............................................................................1

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION
    AND SUMMARY OF ITS POSITION ........................................................2

STATEMENT OF THE CASE...............................................................................4

A.    The securities laws recognize that internal company reporting by
    employees and others is important for deterring, detecting, and
    stopping unlawful conduct that may harm investors.....................................4

B.    By providing new incentives and protections for individuals to
    engage in whistleblowing activity, the Dodd-Frank whistleblower
    program enhances the existing securities-law enforcement scheme,
    including internal company reporting. ..........................................................8

    1.    The Commission carefully calibrated the rules implementing
    the monetary award component of the whistleblower program
    to ensure that individuals were not disincentivized from first
    reporting internally..............................................................................9

    2.    Using its broad rulemaking authority, the Commission
    adopted a rule clarifying that employment retaliation is
    prohibited against individuals who engage in any of the
    whistleblowing activity described in Section
    21F(h)(1)(A)(iii)—including making internal reports at public
    companies of securities fraud violations.............................................13

STANDARD OF REVIEW ..................................................................................17

ARGUMENT .................................................................................................18

I.      Section 21F does not unambiguously demonstrate a Congressional
        intent to restrict employment anti-retaliation protection to *only* those
        individuals who provide the Commission with information relating
        to a violation of the securities laws. ............................................................18

II.     In light of the ambiguity here, the Commission adopted a reasonable
        interpretation in Rule 21F-2(b)(1) that warrants judicial deference. ............27

III.    Failure to defer to Rule 21F-2(b)(1) could arbitrarily and irrationally
        deny the employment retaliation protections afforded by Dodd-
        Frank to individuals who, before coming to the Commission, *first*
        report potential securities law violations to the U.S. Department of
        Justice or Self-Regulatory Organizations such as FINRA. ...........................31

CONCLUSION ...........................................................................................37

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

STATUTORY, REGULATORY, AND DECISIONAL ADDENDUM

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Asadi v. G.E. Energy (U.S.A.), L.L.C.*, 720 F.3d 620
    (5th Cir. 2013) ................................................... 22, 24, 25, *passim*

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................................29

*Berman v. Neo@Ogilvy LLC*, 801 F.3d 145 (2d Cir. 2015)....................................27

*Bussing v. COR Clearing, LLC*, 20 F. Supp. 3d 719
    (D. Neb. 2014) ............................................... 27-28, 35

*Cheruku v. Att'y Gen.*, 662 F.3d 198 (3d Cir. 2011)  ............................................17

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)..............................................................1, 17

*Connolly v. Remkes*, No. 5:14-CV-01344, 2014 WL 5473144
    (N.D. Cal. Oct. 28, 2014) ..............................................27

*Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343
    (C.D. Cal. 2015)..............................................................28

*Dressler v. Lime Energy*, No. 3:14-cv-07060, 2015 WL
    4773326 (D.N.J. Aug. 13, 2015) ..................................27

*Duke v. Prestige Cruises Int'l, Inc.*, No. 14-23017-CIV, 2015
    WL 4886088 (S.D. Fla. Aug. 14, 2015), *appeal docketed*,
    No. 16-15426 (11th Cir. Aug. 11, 2016)........................................28

*Englehart v. Career Educ. Corp.*, No. 8:14-cv-444,
    2014 WL 2619501 (M.D. Fla. May 12, 2014) ..............................................28

*Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208 (2009) .......................................18

*Feltoon v. MG2 Corp.,* No. 2:15-cv-02032, Dkt. 22, slip op.
    (W.D. Wash. Sept. 30, 2016)..........................................27

iv

**CASES (continued)**                                             **Page**

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010).................................................................6

*Hagans v. Comm'r of Social Sec.*, 694 F.3d 287 (3d Cir. 2012).......................17, 18

*Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254
    (5th Cir. 2014) (per curiam), *reh'g en banc denied*,
    596 Fed. App'x 340 (5th Cir. 2015) .............................................26

*Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176
    (3d Cir. 2001).................................................................23

*Jones v. SouthPeak Interactive Corp.*, 777 F.3d 658
    (4th Cir. 2015) ...............................................................26

*Lamb v. Rockwell Automation Inc.,* No. 15-cv-1415, 2016 WL
    4273210 (E.D. Wis. Aug. 12, 2016)...............................................28

*Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198 (1949) ...........................21, 28

*Liu v. Siemens, A.G.*, 978 F. Supp. 2d 325 (S.D.N.Y. 2013),
    *aff'd on other grounds*, 763 F.3d 175 (2d Cir. 2014)...................................23

*Lutzeier v. Citigroup, Inc.*, No. 14-cv-00183, 2015 WL
    7306443 (E.D. Mo. Nov. 19, 2015)................................................27

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) ...................................27

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
    551 U.S. 644 (2007).............................................................17

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009)........................................................... 27-28

*Peters v. LifeLock Inc.*, No. 2:14-cv-00576, 2014 WL 12544495
    (D. Ariz. Sept. 19, 2014) .......................................................27

*Philko Aviation, Inc. v. Shacket*, 462 U.S. 406 (1985) ...........................................28

**CASES (continued)**                                                                 **Page**

*Puffenbarger v. Engility Corp.*, 151 F. Supp. 3d 651
    (E.D. Va. 2015)..............................................................................28

*Somers v. Dig. Realty Trust, Inc.,* 119 F. Supp. 3d 1088
    (N.D. Cal. 2015), *appeal docketed,* No. 15-17352
    (9th Cir. Dec. 1, 2015) (to be argued Nov. 16, 2016) ...................................27

*Sullivan v. Everhart*, 494 U.S. 83 (1990)..................................................................18

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ...................................................17

*United States v. Wilson*, 503 U.S. 329 (1992) .........................................................35

*Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427 (2014)......................................21

*Verble v. Morgan Stanley Smith Barney LLC,* 148 F. Supp. 3d
    644 (E.D. Tenn. 2015), *appeal docketed,* No. 15-6397
    (6th Cir. Dec. 17, 2015) (argued Sept. 14, 2016) .........................................28

*Wadler v. Bio-Rad Labs., Inc.*, 141 F. Supp. 3d 1005
    (N.D. Cal. 2015) ..............................................................................27

*West v. Sullivan,* 973 F.2d 179 (3d Cir. 1992).........................................................17

**STATUTES**

Dodd-Frank Wall Street Reform and Consumer Protection Act,
    Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank")

    Dodd-Frank.......................................................... 7, 8, 19, *passim*
    Dodd-Frank §748, 124 Stat. at 1743-44 ......................................................20
    Dodd-Frank §922, 124 Stat. at 1841-49 .......................................................2
    Dodd-Frank §924(a), 124 Stat. at 1850 .........................................................2

vi

**STATUTES (continued)**                                    **Page**

Sarbanes-Oxley Act of 2002, Pub. L. No. 107, 116 Stat. 745
        ("Sarbanes-Oxley")

   Sarbanes-Oxley.............................................................. 6, 7, 14, *passim*
   Sarbanes-Oxley §301, 116 Stat. at 775-77 ................................7
   Sarbanes-Oxley §307, 15 U.S.C. §7245............................6-7, 15, 19, *passim*
   Sarbanes-Oxley §404, 15 U.S.C. §7262.....................................6
   Sarbanes-Oxley §806, 18 U.S.C. §1514A..............................7-8, 16, *passim*

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

   Section 10A, 15 U.S.C. §78j-1 ...............................................6
   Section 10A(b), 15 U.S.C. §78j-1(b)...................................... 5-6
   Section 10A(m), 15 U.S.C. §78j-1(m) ................................14, 15
   Section 10A(m)(4), 15 U.S.C. §78j-1(m)(4) ............................7, 19
   Section 12, 15 U.S.C. §78*l* ...................................................5
   Section 15(d), 15 U.S.C. §78*o*...............................................5
   Section 21F, 15 U.S.C. §78u-6.................................. 2, 4, 8, *passim*
   Section 21F(a), 15 U.S.C. §78u-6(a).....................................9, 10
   Section 21F(a)(6), 15 U.S.C. §78u-6(a)(6)...........................18, 20, *passim*
   Section 21F(b), 15 U.S.C. §78u-6(b) ................................ 9, 10, 30, *passim*
   Section 21F(c), 15 U.S.C. §78u-6(c)................................ 9, 10, 30, *passim*
   Section 21F(d)(2)(A), 15 U.S.C. §78u-6(d)(2)(A) .......................24
   Section 21F(h)(1), 15 U.S.C. §78u-6(h)(1) ......................... 1, 13, 15, *passim*
   Section 21F(h)(1)(A), 15 U.S.C. §78u-6(h)(1)(A)........... 1, 13-14, 15, *passim*
   Section 21F(h)(1)(A)(i),
        15 U.S.C. §78u-6(h)(1)(A)(i) .................................. 13, 15, 19, *passim*
   Section 21F(h)(1)(A)(ii),
        15 U.S.C. §78u-6(h)(1)(A)(ii)................................. 13, 15, 19, *passim*
   Section 21F(h)(1)(A)(iii),
        15 U.S.C. §78u-6(h)(1)(A)(iii)................................ 13, 14, 16, *passim*
   Section 21F(h)(1)(B), 15 U.S.C. §78u-6(h)(1)(B) .................................14, 23
   Section 21F(h)(1)(B)(i),
        15 U.S.C. §78u-6(h)(1)(B)(i) .................................................14
   Section 21F(h)(1)(C), 15 U.S.C. §78u-6(h)(1)(C) .........................................14
   Section 21F(h)(2), 15 U.S.C. §78u-6(h)(2) .................................24
   Section 21F(j), 15 U.S.C. §78u-6(j) .......................................9, 14

**STATUTES (continued)** **Page**

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
§301, 109 Stat. 737, 762-64..............................................................................5

Section 23(h)(1) of the Commodity Exchange Act,
7 U.S.C. §26(h)(1) ........................................................................................20

18 U.S.C. §1341 ...............................................................................................8
18 U.S.C. §1343 ...............................................................................................8
18 U.S.C. §1344 ...............................................................................................8
18 U.S.C. §1348 ...............................................................................................8
18 U.S.C. §1513(e) ....................................................................................14, 19
18 U.S.C. §1514A(a) ........................................................................................8
18 U.S.C. §1514A(a)(1)(A) .......................................................................33, 34
18 U.S.C. §1514A(a)(1)(C) ..............................................................................8
18 U.S.C. §1514A(c)(1) ..................................................................................26
18 U.S.C. §1514A(c)(2)(C) .............................................................................26

## RULES

Rules under the Securities Exchange Act of 1934, 17 C.F.R. Part 240

Rule 10A-3(b)(3), 17 C.F.R. §240.10A-3(b)(3).............................................7
Rule 17a-5(h)(2), 17 C.F.R. §240.17a-5(h)(2) ...............................................8
Rule 21F-2(b)(1), 17 C.F.R. §240.21F-2(b)(1) ................... 3, 14, 16, *passim*
Rule 21F-2(b)(1)(ii), 17 C.F.R. §240.21F-2(b)(1)(ii) ..................................15
Rule 21F-2(b)(2), 17 C.F.R. §240.21F-2(b)(2) .............................................14
Rule 21F-4(b)(4), 17 C.F.R. §240.21F-4(b)(4) .............................................13
Rule 21F-4(b)(7), 17 C.F.R. §240.21F-4(b)(7) ...............................12, 30, 32
Rule 21F-4(c)(3), 17 C.F.R. §240.21F-4(c)(3)...............................................11
Rule 21F-6(a)(4), 17 C.F.R. §240.21F-6(a)(4)...............................................12
Rule 21F-6(b)(3), 17 C.F.R. §240.21F-6(b)(3) .............................................12

Rules under the Investment Advisers Act of 1940, 17 C.F.R. Part 275

Rule 204A-1(a)(4), 17 C.F.R. §275.204A-1(a)(4) .........................................8
Rule 206(4)-2(a)(6)(ii), 17 C.F.R. §275.206(4)-2(a)(6)(ii).............................8

**RULES (continued)**                                                      **Page**

Rule 38a-1 under the Investment Company Act of 1940,
    17 C.F.R. §270.38a-1(a)(4) ............................................................8

Rule 3(d)(2), Standards of Professional Conduct for Attorneys
    Appearing and Practicing Before the Commission in the
    Representation of an Issuer, 17 C.F.R. §205.3(d)(2) .....................................7

Procedures for Handling Retaliation Complaints under Section 806 of
    the Sarbanes-Oxley Act of 2002, 29 C.F.R. Part 1980

    29 C.F.R. §1980......................................................................26
    29 C.F.R. §1980.105.................................................................26
    29 C.F.R. §1980.106-110 ............................................................26

Fed. R. App. P. 29(a) ..................................................................2

**LEGISLATIVE MATERIALS**

H.R. 4173, 111th Cong. §7203(a) (as passed by House Dec. 11, 2009) .................19

H.R. 4173, 111th Cong. §922(a) (as passed by Senate May 20, 2010)..................20

H.R. 4173, 111th Cong. §922(a) (conference base text) .............................20

*SEC and Corporate Audits (Part 6): Hearings on Detecting and
    Disclosing Financial Fraud Before Subcomm. on Oversight and
    Investigations of the Comm. on Energy and Commerce*,
    99th Cong. 345 (1986) (testimony of John Shad, Chairman) ........................6

**ADMINISTRATIVE MATERIALS**

Interpretation of the SEC's Whistleblower Rules Under Section 21F
    of the Securities Exchange Act of 1934, Exchange Act Release
    No. 34-75592, 80 Fed. Reg. 47,829 (Aug. 10, 2015)...................................29

Proposed Rules for Implementing the Whistleblower Provisions of
    Section 21F of the Securities Exchange Act of 1934,
    75 Fed. Reg. 70,488 (Nov. 17, 2010) ...................................... 3, 4, 10, *passim*

**ADMINISTRATIVE MATERIALS (continued)**                    **Page**

Report of Investigation Pursuant to Section 21(A) of the Securities
    Exchange Act of 1934 and Commission Statement on the
    Relationship of Cooperation to Agency Enforcement Decisions,
    2001 WL 1301408 (Oct. 23, 2001).............................................................. 4-5

Request for Comment on NASDAQ Petition, 68 Fed. Reg. 27,722
    (May 20, 2003) ............................................................................................36

Securities Whistleblower Incentives and Protections,
    76 Fed. Reg. 34,300 (June 13, 2011)........................................ 3, 4, 5, *passim*

**MISCELLANEOUS**

Orly Lobel, *Lawyering Loyalties: Speech Rights and Duties Within
    Twenty-First-Century New Governance*, 77 Fordham L. Rev.
    1245 (2009)...................................................................................................16

No. 16-2881

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

DAVID DANON,

Plaintiff-Appellant,

v.

VANGUARD GROUP, INC.,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE* IN SUPPORT OF THE APPELLANT

## STATEMENT OF THE ISSUE

The Securities and Exchange Commission ("Commission"), after notice-and-comment rulemaking, issued a rule to clarify an ambiguity in the whistleblower employment anti-retaliation provisions in Section 21F(h)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-6(h)(1).  The Commission's rule interpreted the anti-retaliation protections to extend to any individual who engages in the whistleblowing activities described in Section 21F(h)(1)(A), irrespective of whether the individual makes a separate report to the Commission.  Is the Commission's rule entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)?

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION AND SUMMARY OF ITS POSITION

The Commission—the agency principally responsible for the administration of the federal securities laws—submits this brief as *amicus curiae* pursuant to Fed. R. App. P. 29(a) to address an important securities law issue presented in this appeal.

Congress, in Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376, 1841-49 (2010), amended the Exchange Act to add Section 21F, entitled "Securities Whistleblower Incentives and Protection" and codified at 15 U.S.C. §78u-6.  Section 21F directs the Commission to pay awards to individuals whose reports to the Commission about violations of the securities laws result in successful Commission enforcement actions, and prohibits employers from retaliating against individuals in the terms and conditions of their employment when they engage in certain specified whistleblowing activities.  (The award program and anti-retaliation protections are referred to collectively herein as "the whistleblower program.")

In May 2011, at Congress's direction, the Commission issued final rules "implementing the provisions of Section 21F."  *See* Dodd-Frank §924(a), 124 Stat. at 1850.  Throughout the rulemaking process, the Commission considered the "significant issue" of how to ensure that the whistleblower program does not

2

undermine the willingness of individuals to make whistleblower reports internally at their companies before they make reports to the Commission.  Securities Whistleblower Incentives and Protections ("Adopting Release"), 76 Fed. Reg. 34300, 34300, 34323 (June 13, 2011); Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934 ("Proposing Release"), 75 Fed. Reg. 70488, 70488 (Nov. 17, 2010).  The Commission's final rules were carefully calibrated to achieve this objective by providing "strong incentives" for individuals in appropriate circumstances to report internally in the first instance.  Adopting Release at 34301, 34322.[1]

One of those rules—Exchange Act Rule 21F-2(b)(1), 17 C.F.R. §240.21F-2(b)(1)—is at issue in this litigation.[2]  The Commission has a strong programmatic interest in demonstrating that the rule's reasonable interpretation of certain

---

[1]    The Commission recognized that internal reporting is not always appropriate, and the decision whether to do so (either prior to reporting to the Commission or at all) is best left for whistleblowers to determine based on the particular facts and circumstances.  *See* Adopting Release at 34327.  Among the considerations a whistleblower would likely consider are:  (i) whether the employer has an anonymous reporting system; (ii) whether the potential misconduct involves upper-level management; (iii) whether the misconduct is still ongoing and poses a risk of sufficiently significant harm to investors that immediate reporting to the Commission is more appropriate; and (iv) whether the employer may be prone to bad faith conduct such as the destruction of evidence. *Id.* at 34326.

[2]    Each rule designated in this brief as Exchange Act Rule 21F-___ is codified at 17 C.F.R. §240.21F-___.

ambiguous statutory language was a valid exercise of the Commission's broad

rulemaking authority under Section 21F.  This interest arises for two related

reasons.  *First*, the rule helps protect individuals who choose to report potential

violations internally in the first instance (*i.e.*, before reporting to the Commission),

and thus is an important component of the overall design of the whistleblower

program.  *Second*, if the rule were invalidated, the Commission's authority to

pursue enforcement actions against employers that retaliate against individuals

who report internally would be substantially weakened.

## STATEMENT OF THE CASE

**A.**   **The securities laws recognize that internal company reporting by employees and others is important for deterring, detecting, and stopping unlawful conduct that may harm investors.**

Companies' processes for the internal reporting of violations of law and

other misconduct "play an important role in facilitating compliance with the

securities laws."  Adopting Release at 34325; *accord id.* at 34324.  Among other

things, these internal reporting processes can help companies to promptly identify,

correct, and self-report unlawful conduct by officers, employees, or others

connected to the company.  *See generally* Proposing Release at 70496.  In this

way, "reporting through internal compliance procedures can complement or

otherwise appreciably enhance [the Commission's] enforcement efforts … ."

Adopting Release at 34359 n.450; *see also* Report of Investigation Pursuant to

4

Section 21(A) of the Securities Exchange Act of 1934 and Commission Statement
on the Relationship of Cooperation to Agency Enforcement Decisions, 2001 WL
1301408, at *1 (Oct. 23, 2001) ("When businesses seek out, self-report and rectify
illegal conduct, and otherwise cooperate with Commission staff, large expenditures
of government and shareholder resources can be avoided and investors can benefit
more promptly.").[3]

Recognizing the significant role that internal company reporting can play,
Congress for nearly two decades has enacted a series of amendments to the
securities laws to encourage, and in some instances to require, internal reporting of
potential misconduct.  In 1995, Congress amended the Exchange Act to add
Section 10A(b), entitled "Required Response to Audit Discoveries."  *See* Private
Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, §301, 109 Stat. 737,
762-64.  Section 10A(b) imposes a series of internal company disclosure
obligations on a registered public accounting firm that, during the course of
conducting an audit of a public company required by the Exchange Act, discovers
that an illegal act connected to the company has occurred.[4]  Section 10A(b)

---

[3]    To be clear, as the Commission has advised, "while internal compliance
programs are valuable, they are *not substitutes* for strong law enforcement."
Adopting Release at 34326 (emphasis added).

[4]    This brief uses the term "public company" to refer to a company with a class
of securities registered under Section 12 of the Exchange Act and those required to
file reports under Section 15(d) of that Act.

5

describes a process of disclosure by the auditor to the Commission *after* the

auditor's internal disclosures occur and certain other conditions are met, including

a failure on the company's part to take an appropriate response.[5]

In 2002, Congress enacted the Sarbanes-Oxley Act of 2002 ("Sarbanes-

Oxley"), Pub. L. No. 107-204, 116 Stat. 745, in response to "a series of celebrated

accounting debacles"[6] involving companies such as Enron and WorldCom.  As

part of Sarbanes-Oxley, Congress enacted several additional provisions related to

the internal company reporting of wrongdoing.[7]  In Section 307, for example,

Congress directed the Commission to issue rules requiring attorneys appearing and

practicing before the Commission in the representation of public companies "to

report evidence of a material violation" of the securities laws or any "breach of

---

[5]    An early version of the legislative proposal that became Section 10A would
have required auditors to report immediately to the Commission.  SEC Chairman
John Shad testified before Congress at the time in opposition to such a reporting
requirement.  *See SEC and Corporate Audits (Part 6): Hearings on Detecting and
Disclosing Financial Fraud Before Subcomm. on Oversight and Investigations of
the Comm. on Energy and Commerce*, 99th Cong. 345 (1986) ("[W]hy not give
management an opportunity to respond to suspicions and take corrective action?").

[6]    *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 484
(2010).

[7]    A principal aim of Sarbanes-Oxley was to promote the establishment of
robust internal corporate governance mechanisms and processes that could
promptly identify and remedy violations.  *See, e.g.*, Sarbanes-Oxley §404, 15
U.S.C. §7262 (requiring internal compliance systems and an annual audit by
outside auditors).

fiduciary duty or similar violation by the company or any agent thereof" to

specified company officials. Sarbanes-Oxley §307, 15 U.S.C. §7245. These

attorneys are not required to make reports to the Commission and, indeed, may

often be precluded from doing so as a result of their ethical obligations to their

clients.[8] Similarly, Sarbanes-Oxley added Exchange Act Section 10A(m)(4),

which required the Commission, by rule, to direct that national securities

exchanges and national securities associations require that audit committees of

listed companies establish internal company procedures allowing employees and

others to submit complaints "regarding accounting, internal accounting controls, or

auditing matters," and to report anonymously "concerns regarding questionable

accounting or auditing matters." *See* Sarbanes-Oxley §301, 116 Stat. at 775-77; 17

C.F.R. §240.10A-3(b)(3).

Further, Section 806 of Sarbanes-Oxley (as later amended by Dodd-Frank)

prohibited public companies, certain related persons or entities, and nationally

recognized statistical rating organizations from engaging in employment retaliation

---

[8]     Only in limited situations—where an attorney reasonably believes it is
"necessary" to report to the Commission to prevent a securities law violation that
will cause substantial financial injury, or to correct past violations of similar
severity where the attorney's services were used—*may* attorneys report evidence
of a material violation to the Commission. 17 C.F.R. §205.3(d)(2). But even when
such disclosure to the Commission is permitted, an attorney will typically need to
report internally *first* in order to satisfy the requirement that disclosure to the
Commission may be necessary.

7

against an employee who makes certain whistleblower disclosures concerning,

among other things, securities fraud (18 U.S.C. §1348), bank fraud (*id.* §1344),

mail fraud (*id.* §1341), wire fraud (*id.* §1343), or any violation of a Commission

rule or regulation.  18 U.S.C. §1514A(a).  The whistleblower disclosures are

protected if they are made to "a person with supervisory authority over the

employee (or such other person working for the employer who has the authority to

investigate, discover, or terminate misconduct)," or to Congress or certain

governmental agencies (including the Commission).  *Id.* §1514A(a)(1)(C).[9]

**B.**  **By providing new incentives and protections for individuals to engage in whistleblowing activity, the Dodd-Frank whistleblower program enhances the existing securities-law enforcement scheme, including internal company reporting.**

As noted above, Dodd-Frank established the Commission's new

whistleblower program in 2010 by adding Section 21F to the Exchange Act.

Section 21F expressly authorized the Commission "to issue such rules and

---

[9]    The Commission has periodically adopted rules and regulations requiring internal reporting in certain circumstances either within or among regulated entities. *See, e.g.*, 17 C.F.R. §270.38a-1(a)(4) (requiring the chief compliance officer of a mutual fund to report the details of any material compliance matters to the fund's board); 17 C.F.R. §240.17a-5(h)(2) (requiring the auditor of a broker-dealer to report material inadequacies to the chief financial officer); 17 C.F.R. §275.204A-1(a)(4) (requiring each investment adviser to establish a code of ethics requiring supervised persons to report any violations thereof to the chief compliance officer); 17 C.F.R. §275.206(4)-2(a)(6)(ii) (requiring each investment adviser to obtain an internal control report with respect to custody of client assets maintained by the investment adviser or an affiliate).

regulations as may be necessary or appropriate to implement the provisions of this

section consistent with the purposes of this section." Exchange Act §21F(j). In

May 2011, the Commission used that broad authority to adopt final rules

implementing both the monetary award and employment anti-retaliation aspects of

the whistleblower program.

      **1.**     **The Commission carefully calibrated the rules implementing the monetary award component of the whistleblower program to ensure that individuals were not disincentivized from first reporting internally.**

Section 21F directs the Commission to pay awards, subject to certain

limitations and conditions, to individuals who voluntarily provide the Commission

with original information about a violation of the securities laws that leads to the

successful enforcement of an action brought by the Commission resulting in

monetary sanctions exceeding $1,000,000.[10] *See* Exchange Act §21F(a)-(c).

Further, Section 21F affords the Commission discretion to set the amount of each

award within a range of 10 percent to 30 percent of the total monetary sanctions

collected. *Id.*

---

[10]    As discussed *infra* Argument Part III, Section 21F also provides for awards where the same original information that led to a successful Commission enforcement action also led to a successful enforcement action by certain other statutorily specified law enforcement and regulatory authorities, including the U.S. Department of Justice and the various self-regulatory organizations that are under the Commission's supervision (*e.g.*, FINRA).

A principal challenge the Commission faced in crafting rules to implement the award program was ensuring that employees and others were not dissuaded from reporting internally due to the possibility of a monetary award. *See* Proposing Release at 70488 (expressing the Commission's desire "not to discourage whistleblowers who work for companies that have robust compliance programs [from] *first* report[ing] the violation to appropriate company personnel") (emphasis added).  Were this to happen, the Commission recognized, the result could be a reduction in the "effectiveness of a company's existing compliance, legal, audit and similar internal processes for investigating and responding to potential violations of the Federal securities laws," which in turn could weaken corporate compliance with the securities laws.  *Id.* at 70488.[11]  The Commission also recognized that "reporting through internal compliance procedures can complement or otherwise appreciably enhance [its] enforcement efforts in appropriate circumstances."  Adopting Release at 34359 n.450.

> For instance, the subject company may at times be better able to distinguish between meritorious and frivolous claims, and may make such findings available for the Commission.  This would be particularly true in instances where the reported matter entails a high

---

[11]     *Cf.* Proposing Release at 70516 (explaining that "allow[ing] a company a reasonable period of time to investigate and respond to potential securities laws violations (or at least begin an investigation) prior to [an individual making a report] to the Commission" is "consistent with the Commission's efforts to encourage companies to create and implement strong corporate compliance programs").

> level of institutional or company-specific knowledge and/or the
> company has a well-functioning internal compliance program in
> place. Screening allegations through internal compliance programs
> may limit false or frivolous claims, provide the entity an opportunity
> to resolve the violation and report the result to the Commission, and
> allow the Commission to use its resources more efficiently.

*Id.*[12]

Accordingly, the Commission "tailored the final rules to provide

whistleblowers who are otherwise pre-disposed to report internally, but who may

also be affected by financial incentives, with additional economic incentives to

continue to report internally" in the first instance.[13]  *Id.* at 34360.  The final rules

seek to do this in three principal ways:

> ➢ An individual "who reports internally can collect a whistleblower
> award from the Commission if his internal report to the company or
> entity results in a successful covered action." *Id.* (discussing
> Exchange Act Rule 21F-4(c)(3)).

> ➢ An individual "who *first* reports [pursuant] to an entity's internal
> whistleblower, legal, or compliance procedures for reporting
> allegations of possible violations of law and within 120 days reports

---

[12]    *See also* Proposing Release at 70516 (explaining that allowing individuals to
first report internally "provides a mechanism by which some of th[e] erroneous
[tips] may be eliminated before reaching the Commission," and that otherwise "a
large number of tips of varying quality [could] caus[e] the Commission to incur
costs to process and validate the information").

[13]    Many commenters during the rulemaking, particularly industry-affiliated
commenters, urged the Commission to encourage or require individuals to report
internally before reporting to the Commission.  *See, e.g.*, Adopting Release at
34326 n.230 (citing comment letters from, among others, the Business Roundtable
and the U.S. Chamber of Commerce).

to the Commission" will be treated for purposes of an award as "if [the submission to the Commission] had been made at the earlier internal reporting date." *Id.* at 34322 (emphasis added) (discussing Exchange Act Rule 21F-4(b)(7)). "This means that even if, in the interim, another whistleblower has made a submission that caused the [Commission's] staff to begin an investigation into the same matter, the [individual] who had first reported internally will be considered the first whistleblower who came to the Commission … ." *Id.*

➢ "In addition, the final rules provide that when determining the amount of an award, the Commission will consider as a plus-factor the whistleblower's participation in an entity's internal compliance procedures." *Id.* at 34360 (discussing Exchange Act Rule 21F-6(a)(4)).[14] The ability to adjust an award upward based on internal reporting, the Commission explained, would "allow [the Commission] to account for a reduced monetary sanction … where the internal reporting potentially resulted in a lower monetary sanction" because the company responded to the internal report by engaging in remediation, self-reporting and cooperating with the Commission. *Id.* at 34360 n.455.

Beyond the tailored financial incentives that the Commission crafted to encourage individuals to report internally in appropriate situations, the final rules also require that officers, directors, trustees, and partners, as well as other specified personnel having internal audit or compliance responsibilities, must in certain instances *first* internally disclose the information about potential securities law violations and then wait 120 days before reporting the information to the Commission. *See* Exchange Act

---

[14]     Relatedly, the Commission's rules also provide that "a whistleblower's interference with internal compliance and reporting is a factor that can decrease the amount of an award." Adopting Release at 34301, 34331 (discussing Exchange Act Rule 21F-6(b)(3)).

Rule 21F-4(b)(4).  The Commission determined that this restriction was

necessary to discourage "whistleblower submission[s] [that] might

undermine the proper operation of internal compliance systems" that

companies have established for responding to violations of law.  Adopting

Release at 34317.

> **2.      Using its broad rulemaking authority, the Commission adopted a rule clarifying that employment retaliation is prohibited against individuals who engage in any of the whistleblowing activity described in Section 21F(h)(1)(A)(iii)—including making internal reports at public companies of securities fraud violations.**

Section 21F(h)(1) is designed to protect employees who engage in certain

specified whistleblowing activities.  It does this in two significant ways.

*First*, subparagraph (A) seeks to *prevent* employment retaliation by placing

employers on notice that they may not retaliate against employees who engage in

certain whistleblowing activity.  This is clear from the express terms of the

subparagraph, which is drafted as a prohibition directed to employers:

> (A)    In General.  No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i)     in providing information to the Commission in accordance with this section;
>
> (ii)    in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

> (iii)    in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*), this chapter [*i.e.*, the Exchange Act], including section 78j-1(m) of this title [*i.e.*, Section 10A(m) of the Exchange Act], section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.[15]

*Second*, subparagraphs (B) and (C) address the legal remedies that employees can pursue against employers who have failed to heed subparagraph (A)'s prohibition.[16]

The Commission, employing its broad rulemaking authority under Section 21F(j), adopted two clarifying rules related to the prohibition in subparagraph (A). The first rule expressly stated that the Commission possesses authority to bring civil enforcement actions and proceedings against employers who violate the retaliation prohibition.  *See* Exchange Act Rule 21F-2(b)(2).

The second rule, Exchange Act Rule 21F-2(b)(1), clarified that the retaliation prohibition in subparagraph (A) protects any employee who engages in

---

[15]    As discussed *infra* 15-16, the disclosures listed in clause (iii) include the internal company reporting disclosures described above in Part A.

[16]    Subparagraph (B) provides a cause of action in federal district court for any "individual who alleges discharge or other discrimination in violation of subparagraph (A)." Exchange Act §21F(h)(1)(B)(i). Subparagraph (C) provides that relief in a successful action shall include reinstatement, two times back pay, compensation for litigation costs, expert witness fees, and reasonable attorneys' fees. *Id.* §21F(h)(1)(C).

any of the whistleblowing activities specified in clauses (i)-(iii) above, irrespective

of whether the employee separately reports the information to the Commission.  It

provides in pertinent part:

> For purposes of the anti-retaliation protections afforded by Section
> 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a
> whistleblower if:

> (ii)    You provide that information in a manner described in Section
>         21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

17 C.F.R. §240.21F-2(b)(1)(ii).

As the Commission explained in the adopting release, this rule reflects the

fact that clause (iii) prohibits employers from retaliating against "individuals who

report to persons or governmental authorities *other than the Commission*."

Adopting Release at 34304 (emphasis in original).  In particular, clause (iii)

prohibits employers from retaliating against employees who make the "disclosures

that are required or protected under the Sarbanes-Oxley Act" or the other securities

laws, including the internal company disclosures described above in Part A.  For

example:

> ➢ Disclosures that Sarbanes-Oxley Section 307 requires attorneys for
> the public company to make to the company's general counsel
> regarding potential evidence of a material violation of the securities
> laws or a breach of fiduciary duty by a corporate director;

> ➢ Disclosures to an audit committee pursuant to Section 10A(m) of the
> Exchange Act concerning "questionable accounting or auditing
> matters" at a public company; and

15

➢ Disclosures protected under Sarbanes-Oxley Section 806 to a supervisor or compliance official at a public company concerning possible securities fraud, wire fraud, bank fraud, or mail fraud.

Significantly, by clarifying that the prohibition on employment retaliation extends to individuals who report internally in instances such as these (irrespective of whether they have reported to the Commission), Rule 21F-2(b)(1) complements the overall goal of the whistleblower program rulemaking to maintain incentives for individuals to first report internally in appropriate circumstances. In the adopting release, the Commission recognized that the prohibition on employment retaliation would help preserve these incentives for internal reporting, since "[e]mployees who report internally in this manner will have anti-retaliation employment protection to the extent provided for by [Section 21F(h)(1)(A)(iii)], which incorporates the broad anti-retaliation protections of Sarbanes-Oxley Section 806."  Adopting Release at 34325 n.223.  *See generally* Orly Lobel, *Lawyering Loyalties: Speech Rights and Duties Within Twenty-First-Century New Governance*, 77 FORDHAM L. REV. 1245, 1250 (2009) ("[I]nternal protections are particularly crucial in view of research findings that … employees are more likely to choose internal reporting systems.").

## STANDARD OF REVIEW

"An agency's construction of its statutory mandate is entitled to a certain degree of deference." *West v. Sullivan,* 973 F.2d 179, 185 (3d Cir. 1992). *See also United States v. Mead Corp.,* 533 U.S. 218, 226-27 (2001) ("administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority").  Consideration of whether an agency interpretation is permissible involves two steps.  *First*, this Court considers "'whether Congress has directly spoken to the precise question at issue,'" and if so, then "the clear intent of Congress binds both the agency and the court."  *Hagans v. Comm'r of Social Sec.*, 694 F.3d 287, 294 (3d Cir. 2012) (quoting *Chevron*, 467 U.S. at 842).  A "fundamental ambiguity" arises where two statutory provisions present "seemingly categorical—and, at first glance, irreconcilable—legislative commands," thereby affording the agency discretion to "harmonize[]" the provisions.  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661-73 (2007); *accord Cheruku v. Att'y Gen.*, 662 F.3d 198, 203-07 (3d Cir. 2011) (where "straightforward application of [one provision] would render [another provision] a nullity," statutory scheme was ambiguous and agency's reasonable interpretation was entitled to *Chevron* deference).

17

*Second*, if the statute is silent or ambiguous with respect to the specific issue, this Court determines whether the agency's interpretation is reasonable, which means the interpretation is rational and not inconsistent with the statute. *See, e.g.*, *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990); *Hagans,* 694 F.3d at 294. "The agency's interpretation will prevail so long as 'it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts.'" *Hagans*, 694 F.3d at 294 (quoting *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009)).

## ARGUMENT

**I.    Section 21F does not unambiguously demonstrate a Congressional intent to restrict employment anti-retaliation protection to *only* those individuals who provide the Commission with information relating to a violation of the securities laws.**

Congress did not unambiguously limit the employment anti-retaliation protections in Section 21F(h)(1) to only those individuals who provide the Commission with information relating to a securities law violation. Rather, there is ambiguity on this issue given the considerable tension between clause (iii) of Section 21F(h)(1)(A), which as discussed above lists a broad array of whistleblowing activity to entities and persons other than just the Commission, and Section 21F(a)(6), which defines "whistleblower."

To appreciate the significant tension between these two provisions, it is useful to first examine the language and structure of Section 21F(h)(1)(A). As

18

quoted in full *supra* 13-14, Section 21F(h)(1)(A) prohibits an employer from retaliating against a whistleblower:  (i) for "providing information to the Commission in accordance with this section"; (ii) for assisting in an investigation or action of the Commission "based upon or related to such information"; or (iii) for "making disclosures that are required or protected under" Sarbanes-Oxley, the Exchange Act, 18 U.S.C. §1513(e), "and any other law, rule, or regulation subject to the jurisdiction of the Commission."

As the quoted language makes evident, clauses (i) and (ii), together, protect individuals for whistleblowing to the Commission about securities law violations. But the anti-retaliation protection that clause (iii) affords reaches beyond just disclosures involving securities law violations and disclosures to the Commission. It covers, among other things, an employee's submission to a public company's audit committee about questionable accounting practices (including those questionable practices that do not rise to the level of a securities law violation) under Section 10A(m)(4) of the Exchange Act, or an in-house counsel's disclosure under Section 307 of Sarbanes-Oxley about a potential breach of the CEO's fiduciary duty.[17]

---

[17]    The legislative history adds no clarity concerning Congress's intention in adding clause (iii) to Section 21F(h)(1)(A).  Indeed, the provision was added relatively late in the Dodd-Frank legislative process; it was not included either in the original version of the bill that passed the House, *see* H.R. 4173, 111th Cong. §7203(a) (as passed Dec. 11, 2009), or in the version that initially passed the

Yet, the interplay of Section 21F(h)(1)(A) with the definition of "whistleblower" in Section 21F(a)(6) may suggest a different result.  Section 21F(h)(1)(A) protects "a whistleblower in the terms and conditions of employment," and Section 21F(a)(6) in turn defines a "whistleblower" as "any individual who provides … information relating to a violation of the securities laws to the Commission."  If Section 21F(a)(6)'s narrow whistleblower definition is read as a limitation on the overall scope of Section 21F(h)(1)(A), the disclosures protected under clause (iii) would be significantly restricted.  Specifically, an individual would be protected for making one of the whistleblower disclosures identified in clause (iii) *only if* two preconditions are met:

(1)    the individual has separately submitted that same information to Commission, and

(2)    that information involves a securities law violation.

But this reading raises an immediate question:  If Congress had actually intended to protect only those "required or protected" disclosures that satisfy these

---

Senate, *see* H.R. 4173, 111th Cong. §922(a) (as passed May 20, 2010).  The language first appeared in the base conference committee draft that the Senate in May 2010 approved for use in the Dodd-Frank conference committee, *see* H.R. 4173, 111th Cong. §922(a) (conference base text), and it remained in the final version of the committee bill that the House and Senate subsequently approved. Notably, the nearly identical statutory provision of Dodd-Frank that authorized a whistleblower program for the Commodity Futures Trading Commission does not include language comparable to clause (iii).  *See* Dodd-Frank §748, 124 Stat. at 1743-44 (enacting employment anti-retaliation protections as new Section 23(h)(1) to the Commodity Exchange Act, codified at 7 U.S.C. §26(h)(1)).

two conditions, why would Congress craft clause (iii) to unnecessarily suggest that it protects a much broader class of disclosures than it actually does?  Surely Congress could have been more explicit and more direct if it in fact intended to protect only those disclosures that involve securities law violations, and only if the employee has made a separate disclosure to the Commission.  *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2441 (2014) ("[T]he presumption of consistent usage readily yields to context, and a statutory term—even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies.") (quotation marks omitted).  *See also Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949) (rejecting mechanical use of a statutory definition that would "destroy one of the major purposes of" enacting the provision).

That Congress did not unambiguously intend such a result becomes apparent by considering the bizarre consequences that such a narrow reading produces. With one possible exception, clause (iii) becomes superfluous.  If an employer knows that an individual has made a disclosure listed in clause (iii), such as an internal report about a potential securities fraud violation, and the employer is also aware that the individual has provided the same information to the Commission, then as a practical matter the individual will be protected from retaliation under clauses (i) and (ii).  An employer will not be able to disaggregate the

21

whistleblowing to the Commission from the internal whistleblowing so as

persuasively to claim that any retaliation was solely in connection with the latter.

Thus, where an employer knows that an individual has reported to the

Commission, clauses (i) and (ii) would already sufficiently protect the individual

from retaliation should the individual also wish to make the disclosures specified

in clause (iii).

That leaves only one situation where clause (iii) might conceivably have

independent utility—where the employer, unaware that the individual had already

reported to the Commission, takes an adverse employment action against the

employee for a disclosure listed in clause (iii).  Although the Fifth Circuit has

reasoned that this potential scenario saves clause (iii) from being superfluous under

the narrow reading of Section 21F(h)(1)'s employment anti-retaliation protection,

*Asadi v. G.E. Energy (U.S.A.), L.L.C.*, 720 F.3d 620, 627-28 (5th Cir. 2013), that is

far from clear for two reasons.  *First*, as discussed above, subparagraph (A)

principally operates as a prohibition directed to employers; it seeks to *prevent*

retaliation by placing employers on notice that they may not take adverse

employment action against employees who engage in certain whistleblowing

activity.  But under the scenario posited by the *Asadi* court, clause (iii) would be

utterly ineffective as a preventive measure.  Put simply, because in this scenario

employers would not know that a report was made to the Commission, clause (iii)

would have no appreciable effect in deterring employers from taking adverse

employment action for internal reports or the other disclosures listed in clause (iii).

*Second*, it is unlikely that an employee who suffers an adverse employment action

in this situation could even rely on clause (iii) to successfully pursue a private

action against the employer under Section 21F(h)(1)(B).  Whether an individual's

disclosures constitute a "protected activity" under the Fifth Circuit's narrow

reading of clause (iii) would turn on whether the individual has made a separate

disclosure to the Commission.  But if an employer is genuinely unaware that the

employee has separately disclosed to the Commission, any adverse employment

action that the employer takes would appear to lack the requisite retaliatory

intent—*i.e.*, the intent to punish the employee for engaging in a protected

activity.[18]  *Cf. Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir.

2001) (for retaliation claim under False Claims Act, "a plaintiff must show that (1)

his employer had knowledge he was engaged in protected conduct; and (2) that his

---

[18]    As at least one district court has recognized, the alternative would be to
construe the anti-retaliation provision to impose strict liability on an employer (*i.e.*,
intent would not be an element of a retaliation claim).  *See Liu v. Siemens, A.G.*,
978 F. Supp. 2d 325, 332 (S.D.N.Y. 2013), *aff'd on other grounds*, 763 F.3d 175
(2d Cir. 2014).  But we are aware of no precedent for treating an employment anti-
retaliation provision as a strict liability scheme.

employer's retaliation was motivated, at least in part, by the employee's engaging in protected conduct") (quotations omitted).[19]

This examination of the relevant statutory language demonstrates, at a minimum, considerable tension and inconsistency within the text, thus revealing that Congress did not unambiguously express an intent to limit the employment anti-retaliation protections under Section 21F(h)(1) to only those individuals who report securities law violations to the Commission.

Although the Fifth Circuit reached a contrary conclusion in *Asadi*, the court's holding that the statutory language compels the narrow reading described above is based on a flawed understanding of the statutory scheme. The court approached Section 21F as though its sole purpose is "to require individuals to report information to the SEC to qualify as a whistleblower." *Asadi*, 720 F.3d at 630. But this fails to consider the role that Section 21F occupies within the broader securities-law framework, particularly the internal reporting processes that Congress has previously established. As discussed *infra* Part II, the Commission reasonably chose to interpret clause (iii) of Section 21F(h)(1)(A) against that

---

[19]     A further anomaly resulting from this interpretation is that the individual, in order to successfully maintain a retaliation claim, would be required to "out" himself as someone who reported information to the Commission. This conflicts with Congress's strong desire to shield a whistleblower's identity from public disclosure to the fullest extent possible. *See* Exchange Act §21F(h)(2) (confidentiality provisions); *see also id.* §21F(d)(2)(A) (permitting anonymous disclosures to the Commission).

broader framework, construing the statute to afford the same employment anti-retaliation protections for individuals regardless of whether they report to the Commission under the new procedures established by Section 21F or instead make the disclosures "required or protected" under the other provisions of the securities laws.

The Fifth Circuit also erroneously believed that its interpretation was necessary to avoid rendering the private cause of action under Sarbanes-Oxley Section 806, "for practical purposes, moot." *Asadi*, 720 F.3d at 628. The court, after observing that clause (iii) covers the disclosures protected by Section 806, reasoned that "[i]t is unlikely … that an individual would choose to raise a [Sarbanes-Oxley] anti-retaliation claim instead of a Dodd-Frank whistleblower-protection claim" because: (i) Section 21F provides "for greater monetary damages because it allows for recovery of two times back pay, whereas [Section 806] provides for only back pay," and (ii) "the applicable statute of limitations is substantially longer for Dodd-Frank whistleblower-protection claims." *Id.* at 628-29.

But the Fifth Circuit ignored at least two countervailing advantages of a Sarbanes-Oxley Section 806 claim over a Dodd-Frank Section 21F claim:

> ➢ For individuals who want to avoid the burdens of pursuing the claim in court, including potential high litigation costs that they might bear if they do not prevail, actions under Section 806 may be attractive because the claims are heard (at least in the first instance) in an administrative forum

at the Department of Labor ("DOL").  Moreover, DOL assumes
responsibility for investigating the retaliation claim and preparing the
evidence for an administrative law judge's review.[20]

➢ Depending on the nature of the injury, a claim under Section 806 may
afford a greater recovery.  Unlike Section 21F, Section 806 provides for
"all relief necessary to make the employee whole" and for "compensation
for any special damages."  18 U.S.C. §1514A(c)(1) & (c)(2)(C).  This
language has been held to authorize compensation for emotional distress
and reputational harm.[21]  Thus, individuals who have experienced
minimal pay loss, but significant emotional injuries, may find Section
806 actions more attractive.

Finally, the Fifth Circuit expressed concern that any other reading of Section

21F "would read the words 'to the Commission' out of the definition of

'whistleblower' for purposes of the whistleblower-protection provision."  *Asadi*,

720 F.3d at 628.  But applying the Section 21F(a)(6) definition of whistleblower to

Section 21F(h)(1)(A) makes the phrase "to the Commission" in clause (i) and the

similar reference in clause (ii) superfluous.  That either of two competing

interpretations yields superfluous statutory language confirms that Congress did

---

[20]   DOL has delegated to its sub-agency the Occupational Safety and Health
Administration ("OSHA") responsibility for receiving and investigating claims
under Section 806.  *See generally* 29 C.F.R. §1980.  If OSHA finds the employee
suffered retaliation, it may order immediate reinstatement.  *Id.* §1980.105.
OSHA's findings are subject to a *de novo* hearing before an administrative law
judge and review by DOL's Administrative Review Board.  *Id.* §§1980.106-110.

[21]   *See Jones v. SouthPeak Interactive Corp.*, 777 F.3d 658, 663 (4th Cir. 2015)
("emotional distress damages are available" under Section 806); *Halliburton, Inc.
v. Admin. Review Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (per curiam) (Section 806
"affords noneconomic compensatory damages"), *reh'g en banc denied*, 596 Fed.
App'x 340 (5th Cir. 2015).

not speak unambiguously on the issue.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2248 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute.") (quotation omitted).

## II.    In light of the ambiguity here, the Commission adopted a reasonable interpretation in Rule 21F-2(b)(1) that warrants judicial deference.

By adopting Exchange Act Rule 21F-2(b)(1) to specify what persons are whistleblowers for purposes of the anti-retaliation provisions, the Commission revealed its view that Section 21F(h)(1)(A) is best read as an implied exception to the definition of whistleblower in Section 21F(a)(6).  Because the language of Section 21F is ambiguous in this respect, the Second Circuit and the majority of district courts addressing the issue have deferred to Rule 21F-2(b)(1) as embodying the Commission's reasonable reading of the statute.  *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 153-55 (2d Cir. 2015) (collecting district court decisions and expressly rejecting *Asadi*).[22]  *See generally Nw. Austin Mun. Util. Dist. No. One v.*

---

[22]    *See also Feltoon v. MG2 Corp.,* No. 2:15-cv-02032, Dkt. 22, slip op. 4-5 (W.D. Wash. Sept. 30, 2016) (following *Berman*); *Lutzeier v. Citigroup, Inc.*, No. 14-cv-00183, 2015 WL 7306443, at *2 (E.D. Mo. Nov. 19, 2015); *Wadler v. Bio-Rad Labs., Inc.*, 141 F. Supp. 3d 1005, 1023-27 (N.D. Cal. 2015); *Dressler v. Lime Energy*, No. 3:14-cv-07060, 2015 WL 4773326, at *4-16 (D.N.J. Aug. 13, 2015); *Somers v. Dig. Realty Trust, Inc.,* 119 F. Supp. 3d 1088, 1094-1106 (N.D. Cal. 2015), *appeal docketed,* No. 15-17352 (9th Cir. Dec. 1, 2015) (to be argued Nov. 16, 2016); *Connolly v. Remkes*, No. 5:14-CV-01344, 2014 WL 5473144, at *4-6 (N.D. Cal. Oct. 28, 2014); *Peters v. LifeLock Inc.*, No. 2:14-cv-00576, 2014 WL 12544495, at *4-7 (D. Ariz. Sept. 19, 2014); *Bussing v. COR Clearing, LLC*, 20 F.

*Holder*, 557 U.S. 193, 206-207 (2009) ("'Statutory definitions control the meaning of statutory words, of course, in the usual case.  But this is an unusual case.'") (quoting *Lawson*, 336 U.S. at 201); *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 411-12 (1983) (similar).

The Commission thus promulgated Exchange Act Rule 21F-2(b)(1) to clarify that, "[f]or purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act, you are a whistleblower if … [y]ou provide that information in a manner described in Section 21F(h)(1)(A)."  In doing so, the Commission concluded "that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category [*i.e.*, clause (iii)] includes individuals who report to persons or governmental authorities *other than the Commission*."  Adopting Release at 34304.  The Commission explained that, accordingly, the anti-retaliation protections will extend to, among others, employees of public companies who make certain disclosures internally to "a

---

Supp. 3d 719, 727-35 (D. Neb. 2014).  *But see also Lamb v. Rockwell Automation Inc.,* No. 15-cv-1415, 2016 WL 4273210, at *3-4 (E.D. Wis. Aug. 12, 2016) (following *Asadi*); *Puffenbarger v. Engility Corp.*, 151 F. Supp. 3d 651, 663-65 (E.D. Va. 2015); *Verble v. Morgan Stanley Smith Barney LLC,* 148 F. Supp. 3d 644, 650-56 (E.D. Tenn. 2015), *appeal docketed,* No. 15-6397 (6th Cir. Dec. 17, 2015) (argued Sept. 14, 2016); *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1347-50 (C.D. Cal. 2015); *Duke v. Prestige Cruises Int'l, Inc.*, No. 14-23017-CIV, 2015 WL 4886088, at *3 (S.D. Fla. Aug. 14, 2015), *appeal docketed,* No. 16-15426 (11th Cir. Aug. 11, 2016); *Englehart v. Career Educ. Corp.*, No. 8:14-cv-444, 2014 WL 2619501, at *3-9 (M.D. Fla. May 12, 2014).

person with supervisory authority over the employee or such other person working
for the employer who has authority to investigate, discover, or terminate
misconduct." *Id.*[23]

The Commission's interpretation is reasonable because it resolves the
statutory ambiguity in a manner that effectuates the broad employment anti-
retaliation protections that clause (iii) contemplates.  The Commission's
interpretation is also reasonable because, by ensuring that individuals who report
internally first will not be potentially disadvantaged by losing employment anti-
retaliation protection under Section 21F, it better supports a core overall objective
of the whistleblower rulemaking—avoiding disincentivizing individuals from
reporting internally first in appropriate circumstances.  By establishing parity
between individuals who first report to the Commission and those who first report
internally, the Commission's rule avoids a two-tiered structure of anti-retaliation
protections that might discourage some individuals from first reporting internally

---

[23]    The Fifth Circuit in *Asadi* questioned whether under the Commission's
whistleblower rules Rule 21F-2(b)(1) actually governs the reporting methods that
qualify an individual as a whistleblower for the purpose of receiving employment
retaliation protections.  720 F.3d at 629-30.  Although the Commission disagrees
that there was any ambiguity or inconsistency, the Commission has since issued an
interpretive rule to provide absolute clarity on the issue.  Interpretation of the
SEC's Whistleblower Rules Under Section 21F of the Securities Exchange Act of
1934, Exchange Act Release No. 34-75592, 80 Fed. Reg. 47,829, 47,829-30 (Aug.
10, 2015).  That interpretation is "controlling."  *Auer v. Robbins*, 519 U.S. 452,
461 (1997).

in appropriate circumstances and, thus, jeopardize the benefits that can result from internal reporting, *supra* 4-5, 16.  The Commission's decision to adopt this interpretation was reasonable in light of its view, based on its experience and expertise, that if internal compliance and reporting procedures "are not utilized or working, our system of securities regulation will be less effective."  Proposing Release at 70500.[24]

Lastly, the Commission's interpretation was reasonable because it enhances the Commission's ability to bring enforcement actions when employers take adverse employment actions against employees for reporting securities law violations internally.  A contrary result that narrowly cabined this enforcement authority to only those situations where the employee has separately reported to the

---

[24]     Rule 21F-2(b)(1) also supports the whistleblower program by extending anti-retaliation protection to individuals who first report to designated authorities *other than the Commission*.  Section 21F(b) & (c) authorize awards to such individuals under certain circumstances when their information leads to successful "related actions" by the other designated authorities.  To facilitate this reporting, the Commission adopted Rule 21F-4(b)(7), under which individuals who first provide information to a designated authority and then within 120 days submit the same information to the Commission will be treated as though they reported to the Commission as of the date of the original report to the designated authority.  Rule 21F-2(b)(1) ensures that individuals who follow this reporting approach will not lose anti-retaliation protection during the period prior to their report to the Commission.

Commission would significantly weaken the deterrence effect on employers who might otherwise consider taking an adverse employment action.[25]

**III.    Failure to defer to Rule 21F-2(b)(1) could arbitrarily and irrationally deny the employment retaliation protections afforded by Dodd-Frank to individuals who, before coming to the Commission, *first* report potential securities law violations to the U.S. Department of Justice or Self-Regulatory Organizations such as FINRA.**

Important law enforcement interests beyond the considerations connected to internal company reporting counsel in favor of deference to the interpretation in Rule 21F-2(b)(1).  Congress in Section 21F sought to encourage individuals to make reports of misconduct not just to the Commission, but also to certain other law enforcement and regulatory authorities.  As demonstrated below, this congressional purpose is revealed through both the award program and the employment retaliation protections.

Section 21F directs that, for any individual who is a meritorious whistleblower in a Commission enforcement action, the Commission shall pay a monetary award of 10 percent to 30 percent of the monetary sanctions collected in any "related action" if the same information that led to the successful prosecution of the Commission action also led to the successful prosecution of the related action.  *See* Exchange Act §21F(b) & (c).  A related action is "any judicial or administrative action brought by," among other entities, the U.S. Department of

---

[25]    The Commission lacks such authority under Sarbanes-Oxley Section 806.

Justice ("DOJ"), the federal banking regulators (including the Board of Governors
of the Federal Reserve System and the Comptroller of the Currency), and the
various self-regulatory organizations ("SROs") that are subject to the jurisdiction
and oversight of the Commission (such as FINRA and NYSE).  Significantly,
nothing in the provisions that establish the award program requires that an
individual report to the Commission before or at the same time as reporting to any
of these other authorities.  So, for example, an individual who provides the FBI
with original information about a potential securities law violation before reporting
that same information to the Commission can recover a monetary award based on
resulting successful Commission and related actions no differently than if he or she
had reported the information to the Commission before going to the FBI.[26]

The employment retaliation protections afforded by clause (iii) of Section
21F(h)(1)(A), in turn, complement the related action component of the award
program.  Clause (iii) does this by prohibiting employment retaliation against
individuals who make various types of disclosure to either the DOJ or the other

---

[26]    Under the 120-day look-back established by Exchange Act Rule 21F-
4(b)(7), an individual who first makes the disclosure to the FBI or any of the other
law enforcement or regulatory authorities that can pursue a related action, and
within 120 days submits the same information to the Commission, will be treated
for purposes of an award determination as if the submission to the Commission had
been made on the date of the submission to the other authority.

federal government agencies that can bring related actions, as well as the SROs.[27]

In this way, the employment retaliation protections of Section 21F(h)(1)(A) are

generally co-extensive with the award program:  clauses (i) and (ii) provide

employment retaliation protection for providing information to the Commission,

which may lead to a successful Commission action for which an award may be

paid, while clause (iii) affords employment retaliation protection for providing

information to a law enforcement or regulatory authority *other than the*

*Commission*, which may lead to a successful related action for which an award

may be paid.[28]

Significantly, under the interpretation provided by the Commission's rule,

individuals who report *first* to one of these other authorities before coming to the

Commission are protected from employment retaliation under Section

21F(h)(1)(A) to the same degree as an individual who reports first to the

---

[27]    Clause (iii) provides employment retaliation protection based on disclosures
to DOJ and the other federal agencies by expressly incorporating the "disclosures
that are required or protected under the Sarbanes-Oxley Act," which includes
Sarbanes-Oxley Section 806.  Section 806, in turn, prohibits employment
retaliation based on certain disclosures of securities law violations to a "Federal
regulatory or law enforcement agency."  18 U.S.C. §1514A(a)(1)(A).

[28]    We note that there is one exception to the general symmetry that exists
within Section 21F between the related-action award provisions and the
employment retaliation protections afforded by clause (iii).  While the Commission
may make an award for a related action that is a criminal matter brought by a state
attorney general, clause (iii) does not cover disclosures made directly to state
attorneys general.

Commission.  In other words, Rule 21F-2(b)(1) represents a policy judgment that is fully consistent with the policy judgment that Congress established in writing the statutory award provisions.  The award provisions express no preference in how individuals sequence their reporting as between the Commission and the other authorities.  So too Rule 21F-2(b)(1) ensures that individuals receive the same employment retaliation protections regardless of whether they report to the Commission before or after reporting to the other authorities.

But were this Court to reject the Commission's interpretation and instead follow the Fifth Circuit's *Asadi* decision, an individual who decides to report first to one of the other authorities could be significantly more exposed to the risks of employment retaliation.  For example, if an individual makes a report of securities fraud first to the FBI and is promptly fired before making a similar report to the Commission, he will be unable to invoke the enhanced employment retaliation protections of Section 21F and will have only the protections afforded by Sarbanes-Oxley Section 806 (assuming the individual is within the categories of employees covered by that provision).[29]  Yet had this individual reported to the Commission first, he would have the protections of both Section 21F and

---

[29]    As noted in footnote 27, *supra*, Sarbanes-Oxley Section 806—in addition to protecting individuals against employment retaliation when they make internal reports of securities fraud and certain other violations—protects against employment retaliation when an individual makes a report to "a Federal regulatory or law enforcement agency."  18 U.S.C. §1514A(a)(1)(A).

Sarbanes-Oxley Section 806.  There is no basis to believe that Congress would

have intended this disparate treatment based purely on the happenstance of which

agency the individual reported to first given the dual responsibility that the

Commission and DOJ have for the enforcement of the securities laws.[30]  *See*

*generally United States v. Wilson*, 503 U.S. 329, 334 (1992) (an interpretation that

produces an "arbitrary" or "absurd" result should be avoided).

And the consequences of the *Asadi* decision are potentially even more severe

for an individual who first reports to an SRO and is fired before being able to make

a similar report to the Commission.  Reports to SROs fall within the scope of

clause (iii) of Section 21F(h)(1)(A) to the extent that such disclosures are "required

or protected" by a Commission or SRO rule ("covered disclosure").[31]  *See Bussing*,

20 F. Supp. 3d at 734-35 (disclosures required or protected by SRO rules are

covered by clause (iii)).  But Sarbanes-Oxley Section 806, by contrast, does not

---

[30]    Generally speaking, the Commission has responsibility for pursuing civil actions for violations of the federal securities laws while DOJ possesses criminal enforcement authority.

[31]    Section 21F(h)(1)(A)(iii) provides protection for any disclosure "required or protected" by a "rule or regulation *subject to the jurisdiction of the Commission*." Exchange Act §21F(h)(1)(A)(iii) (emphasis added).  As explained in *Bussing*, 20 F. Supp. 3d at 732, 734-35, SRO rules are "subject to the jurisdiction of the Commission" for purposes of the employment retaliation protections of Section 21F(h)(1) because the Commission has statutory authority to approve or disapprove such rules.  The Commission also possesses jurisdiction to review SRO disciplinary proceedings in which such rules are enforced.

provide any employment retaliation protection for any disclosures made to SROs.

Thus, if an individual makes a covered disclosure to an SRO and is fired before

making the same disclosure to the Commission, that individual will not only have

no legal recourse under Section 21F, but he will also have no recourse under

Sarbanes-Oxley Section 806 (unlike the individual who first reports to DOJ).  This

result is deeply problematic because SROs by congressional design have long been

"a vital element in the regulation of the securities industry," helping "enforce

compliance by its members, and persons associated with its members, with the

federal securities laws."  Request for Comment on NASDAQ Petition, 68 Fed.

Reg. 27,722, 27,722 (May 20, 2003).  Given this vital SRO role, individuals

frequently report violations of the securities laws to them in the first instance rather

than coming directly to the Commission; so were this Court to adopt the *Asadi*

approach, there is a real risk that individuals could expose themselves to retaliation

without the benefit of the protections of Section 21F(h)(1)(A).

The interpretation that the Commission has advanced in Rule 21F-2(b)(1)

prevents the arbitrary and irrational results identified above by ensuring that

individuals experience no diminution in the employment retaliation protections

afforded to them as a result of the sequence of their reporting.  Accordingly,

deference to the Commission's interpretation is warranted for this additional

reason.

## CONCLUSION

For the foregoing reasons, this Court should defer to the Commission's rule and hold that individuals are entitled to employment anti-retaliation protection if they make any of the disclosures identified in Section 21F(h)(1)(A)(iii) of the Exchange Act, irrespective of whether they separately report the information to the Commission.

Respectfully submitted,

SANKET J. BULSARA
Deputy General Counsel

MICHAEL A. CONLEY
Solicitor

THOMAS J. KARR
Assistant General Counsel

s/ Stephen G. Yoder
STEPHEN G. YODER
Senior Litigation Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
Telephone:  (202) 551-4532 (Yoder)

October 26, 2016

## COMBINED CERTIFICATIONS

I hereby certify that:

1.      I am an attorney representing a federal administrative agency.  *See* 3d Cir. L.A.R. 28.3(d) & Committee Comments.

2.      This brief contains 8,735 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as counted using Microsoft Office Word 2010, and it therefore complies with the 9,000-word limit requested in the Commission's unopposed motion filed with this Court on this same date.

3.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-Point Times New Roman font.

4.      The electronic version of this brief is identical to the text version in the paper copies filed with the Clerk of Court.  3d Cir. L.A.R. 31.1(b), (c).

5.      The electronic version of this brief was scanned for viruses and was found to contain none using McAfee VirusScan Enterprise and AntiSpyware Enterprise Version 8.8.  *See* 3d Cir. L.A.R. 31.1(c).

s/ Stephen G. Yoder
Stephen G. Yoder
Senior Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040

October 26, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2016, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that, within five (5) days of electronic filing, I will cause seven (7) identical paper copies of the foregoing brief to be filed with the Clerk of Court and one (1) identical paper copy to be served on counsel for each party separately represented.  3d Cir. L.A.R. 31.1(a), 113.1(b); *Order: Reduced Number of Copies of Briefs Required* (3d Cir. Apr. 29, 2013).

s/ Stephen G. Yoder
Stephen G. Yoder
Senior Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040

October 26, 2016

# STATUTORY, REGULATORY, AND DECISIONAL ADDENDUM

## TABLE OF CONTENTS

15 U.S.C. § 78u-6...........................................................................Add. 1

17 C.F.R. § 240.21F........................................................................Add. 6

*Feltoon v. MG2 Corp.,* No. 2:15-cv-02032, Dkt.22,
    (W.D. Wash. Sept. 30, 2016)..............................................Add. 22

sion to exercise similar authority or to adopt similar rules and regulations with respect to forward-looking statements under any other statute under which the Commission exercises rulemaking authority.

**(i) Definitions**

For purposes of this section, the following definitions shall apply:

**(1) Forward-looking statement**

The term "forward-looking statement" means—

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

**(2) Investment company**

The term "investment company" has the same meaning as in section 80a–3(a) of this title.

**(3) Going private transaction**

The term "going private transaction" has the meaning given that term under the rules or regulations of the Commission issued pursuant to section 78m(e) of this title.

**(4) Person acting on behalf of an issuer**

The term "person acting on behalf of an issuer" means any officer, director, or employee of such issuer.

**(5) Other terms**

The terms "blank check company", "rollup transaction", "partnership", "limited liability company", "executive officer of an entity" and "direct participation investment program", have the meanings given those terms by rule or regulation of the Commission.

(June 6, 1934, ch. 404, title I, § 21E, as added Pub. L. 104–67, title I, § 102(b), Dec. 22, 1995, 109 Stat. 753.)

REFERENCES IN TEXT

This chapter, referred to in subsecs. (c)(1), (f), and (g), was in the original "this title". See References in Text note set out under section 78a of this title.

EFFECTIVE DATE

This section not to affect or apply to any private action arising under this chapter or title I of the Securi-
ties Act of 1933 (15 U.S.C. 77a et seq.), commenced before and pending on Dec. 22, 1995, see section 108 of Pub. L. 104–67, set out as an Effective Date of 1995 Amendment note under section 77l of this title.

CONSTRUCTION

Nothing in section to be deemed to create or ratify any implied right of action, or to prevent Commission, by rule or regulation, from restricting or otherwise regulating private actions under this chapter, see section 203 of Pub. L. 104–67, set out as a note under section 78j–1 of this title.

## § 78u–6. Securities whistleblower incentives and protection

**(a) Definitions**

In this section the following definitions shall apply:

**(1) Covered judicial or administrative action**

The term "covered judicial or administrative action" means any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000.

**(2) Fund**

The term "Fund" means the Securities and Exchange Commission Investor Protection Fund.

**(3) Original information**

The term "original information" means information that—

(A) is derived from the independent knowledge or analysis of a whistleblower;

(B) is not known to the Commission from any other source, unless the whistleblower is the original source of the information; and

(C) is not exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, unless the whistleblower is a source of the information.

**(4) Monetary sanctions**

The term "monetary sanctions", when used with respect to any judicial or administrative action, means—

(A) any monies, including penalties, disgorgement, and interest, ordered to be paid; and

(B) any monies deposited into a disgorgement fund or other fund pursuant to section 308(b) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(b)), as a result of such action or any settlement of such action.

**(5) Related action**

The term "related action", when used with respect to any judicial or administrative action brought by the Commission under the securities laws, means any judicial or administrative action brought by an entity described in subclauses (I) through (IV) of subsection (h)(2)(D)(i) that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the Commission action.

**(6) Whistleblower**

The term "whistleblower" means any individual who provides, or 2 or more individuals

acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission.

**(b) Awards**

**(1) In general**

In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to—

(A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and

(B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

**(2) Payment of awards**

Any amount paid under paragraph (1) shall be paid from the Fund.

**(c) Determination of amount of award; denial of award**

**(1) Determination of amount of award**

**(A) Discretion**

The determination of the amount of an award made under subsection (b) shall be in the discretion of the Commission.

**(B) Criteria**

In determining the amount of an award made under subsection (b), the Commission—

(i) shall take into consideration—

(I) the significance of the information provided by the whistleblower to the success of the covered judicial or administrative action;

(II) the degree of assistance provided by the whistleblower and any legal representative of the whistleblower in a covered judicial or administrative action;

(III) the programmatic interest of the Commission in deterring violations of the securities laws by making awards to whistleblowers who provide information that lead to the successful enforcement of such laws; and

(IV) such additional relevant factors as the Commission may establish by rule or regulation; and

(ii) shall not take into consideration the balance of the Fund.

**(2) Denial of award**

No award under subsection (b) shall be made—

(A) to any whistleblower who is, or was at the time the whistleblower acquired the original information submitted to the Commission, a member, officer, or employee of—

(i) an appropriate regulatory agency;

(ii) the Department of Justice;

(iii) a self-regulatory organization;

(iv) the Public Company Accounting Oversight Board; or

(v) a law enforcement organization;

(B) to any whistleblower who is convicted of a criminal violation related to the judicial or administrative action for which the whistleblower otherwise could receive an award under this section;

(C) to any whistleblower who gains the information through the performance of an audit of financial statements required under the securities laws and for whom such submission would be contrary to the requirements of section 78j–1 of this title; or

(D) to any whistleblower who fails to submit information to the Commission in such form as the Commission may, by rule, require.

**(d) Representation**

**(1) Permitted representation**

Any whistleblower who makes a claim for an award under subsection (b) may be represented by counsel.

**(2) Required representation**

**(A) In general**

Any whistleblower who anonymously makes a claim for an award under subsection (b) shall be represented by counsel if the whistleblower anonymously submits the information upon which the claim is based.

**(B) Disclosure of identity**

Prior to the payment of an award, a whistleblower shall disclose the identity of the whistleblower and provide such other information as the Commission may require, directly or through counsel for the whistleblower.

**(e) No contract necessary**

No contract with the Commission is necessary for any whistleblower to receive an award under subsection (b), unless otherwise required by the Commission by rule or regulation.

**(f) Appeals**

Any determination made under this section, including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission. Any such determination, except the determination of the amount of an award if the award was made in accordance with subsection (b), may be appealed to the appropriate court of appeals of the United States not more than 30 days after the determination is issued by the Commission. The court shall review the determination made by the Commission in accordance with section 706 of title 5.

**(g) Investor Protection Fund**

**(1) Fund established**

There is established in the Treasury of the United States a fund to be known as the ''Securities and Exchange Commission Investor Protection Fund''.

**(2) Use of Fund**

The Fund shall be available to the Commission, without further appropriation or fiscal year limitation, for—

(A) paying awards to whistleblowers as provided in subsection (b); and

(B) funding the activities of the Inspector General of the Commission under section 78d(i) of this title.

**(3) Deposits and credits**

**(A) In general**

There shall be deposited into or credited to the Fund an amount equal to—

(i) any monetary sanction collected by the Commission in any judicial or administrative action brought by the Commission under the securities laws that is not added to a disgorgement fund or other fund under section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246) or otherwise distributed to victims of a violation of the securities laws, or the rules and regulations thereunder, underlying such action, unless the balance of the Fund at the time the monetary sanction is collected exceeds $300,000,000;

(ii) any monetary sanction added to a disgorgement fund or other fund under section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246) that is not distributed to the victims for whom the Fund was established, unless the balance of the disgorgement fund at the time the determination is made not to distribute the monetary sanction to such victims exceeds $200,000,000; and

(iii) all income from investments made under paragraph (4).

**(B) Additional amounts**

If the amounts deposited into or credited to the Fund under subparagraph (A) are not sufficient to satisfy an award made under subsection (b), there shall be deposited into or credited to the Fund an amount equal to the unsatisfied portion of the award from any monetary sanction collected by the Commission in the covered judicial or administrative action on which the award is based.

**(4) Investments**

**(A) Amounts in Fund may be invested**

The Commission may request the Secretary of the Treasury to invest the portion of the Fund that is not, in the discretion of the Commission, required to meet the current needs of the Fund.

**(B) Eligible investments**

Investments shall be made by the Secretary of the Treasury in obligations of the United States or obligations that are guaranteed as to principal and interest by the United States, with maturities suitable to the needs of the Fund as determined by the Commission on the record.

**(C) Interest and proceeds credited**

The interest on, and the proceeds from the sale or redemption of, any obligations held in the Fund shall be credited to the Fund.

**(5) Reports to Congress**

Not later than October 30 of each fiscal year beginning after July 21, 2010, the Commission

shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Committee on Financial Services of the House of Representatives a report on—

(A) the whistleblower award program, established under this section, including—

(i) a description of the number of awards granted; and

(ii) the types of cases in which awards were granted during the preceding fiscal year;

(B) the balance of the Fund at the beginning of the preceding fiscal year;

(C) the amounts deposited into or credited to the Fund during the preceding fiscal year;

(D) the amount of earnings on investments made under paragraph (4) during the preceding fiscal year;

(E) the amount paid from the Fund during the preceding fiscal year to whistleblowers pursuant to subsection (b);

(F) the balance of the Fund at the end of the preceding fiscal year; and

(G) a complete set of audited financial statements, including—

(i) a balance sheet;

(ii) income statement; and

(iii) cash flow analysis.

**(h) Protection of whistleblowers**

**(1) Prohibition against retaliation**

**(A) In general**

No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j–1(m) of this title, section 1513(e) of title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

**(B) Enforcement**

**(i) Cause of action**

An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C).

**(ii) Subpoenas**

A subpoena requiring the attendance of a witness at a trial or hearing conducted under this section may be served at any place in the United States.

**(iii) Statute of limitations**

**(I) In general**

An action under this subsection may not be brought—

(aa) more than 6 years after the date on which the violation of subparagraph (A) occurred; or

(bb) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A).

**(II) Required action within 10 years**

Notwithstanding subclause (I), an action under this subsection may not in any circumstance be brought more than 10 years after the date on which the violation occurs.

**(C) Relief**

Relief for an individual prevailing in an action brought under subparagraph (B) shall include—

(i) reinstatement with the same seniority status that the individual would have had, but for the discrimination;

(ii) 2 times the amount of back pay otherwise owed to the individual, with interest; and

(iii) compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

**(2) Confidentiality**

**(A) In general**

Except as provided in subparagraphs (B) and (C), the Commission and any officer or employee of the Commission shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower, except in accordance with the provisions of section 552a of title 5, unless and until required to be disclosed to a defendant or respondent in connection with a public proceeding instituted by the Commission or any entity described in subparagraph (C). For purposes of section 552 of title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section.

**(B) Exempted statute**

For purposes of section 552 of title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section 552.

**(C) Rule of construction**

Nothing in this section is intended to limit, or shall be construed to limit, the ability of the Attorney General to present such evidence to a grand jury or to share such evidence with potential witnesses or defendants in the course of an ongoing criminal investigation.

**(D) Availability to government agencies**

**(i) In general**

Without the loss of its status as confidential in the hands of the Commission, all information referred to in subparagraph (A) may, in the discretion of the Commission, when determined by the Commission to be necessary to accomplish the purposes of this chapter and to protect investors, be made available to—

(I) the Attorney General of the United States;

(II) an appropriate regulatory authority;

(III) a self-regulatory organization;

(IV) a State attorney general in connection with any criminal investigation;

(V) any appropriate State regulatory authority;

(VI) the Public Company Accounting Oversight Board;

(VII) a foreign securities authority; and

(VIII) a foreign law enforcement authority.

**(ii) Confidentiality**

**(I) In general**

Each of the entities described in subclauses (I) through (VI) of clause (i) shall maintain such information as confidential in accordance with the requirements established under subparagraph (A).

**(II) Foreign authorities**

Each of the entities described in subclauses (VII) and (VIII) of clause (i) shall maintain such information in accordance with such assurances of confidentiality as the Commission determines appropriate.

**(3) Rights retained**

Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any whistleblower under any Federal or State law, or under any collective bargaining agreement.

**(i) Provision of false information**

A whistleblower shall not be entitled to an award under this section if the whistleblower—

(1) knowingly and willfully makes any false, fictitious, or fraudulent statement or representation; or

(2) uses any false writing or document knowing the writing or document contains any false, fictitious, or fraudulent statement or entry.

**(j) Rulemaking authority**

The Commission shall have the authority to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section consistent with the purposes of this section.

(June 6, 1934, ch. 404, title I, § 21F, as added Pub. L. 111–203, title IX, § 922(a), July 21, 2010, 124 Stat. 1841.)

REFERENCES IN TEXT

The Sarbanes-Oxley Act of 2002, referred to in subsec. (h)(1)(A)(iii), is Pub. L. 107–204, July 30, 2002, 116 Stat. 745. For complete classification of this Act to the Code, see Short Title note set out under section 7201 of this title and Tables.

This chapter, referred to in subsec. (h)(1)(A)(iii), was in the original "the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.)". This chapter, referred to in subsec. (h)(2)(D)(i), was in the original "this Act". See Ref-

erences in Text note set out under section 78a of this title.

EFFECTIVE DATE

Section effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as a note under section 5301 of Title 12, Banks and Banking.

## § 78u–7. Implementation and transition provisions for whistleblower protection

**(a) Implementing rules**

The Commission shall issue final regulations implementing the provisions of section 78u–6 of this title, as added by this subtitle, not later than 270 days after July 21, 2010.

**(b) Original information**

Information provided to the Commission in writing by a whistleblower shall not lose the status of original information (as defined in section 78u–6(a)(3) of this title, as added by this subtitle) solely because the whistleblower provided the information prior to the effective date of the regulations, if the information is provided by the whistleblower after July 21, 2010.

**(c) Awards**

A whistleblower may receive an award pursuant to section 78u–6 of this title, as added by this subtitle, regardless of whether any violation of a provision of the securities laws, or a rule or regulation thereunder, underlying the judicial or administrative action upon which the award is based, occurred prior to July 21, 2010.

**(d) Administration and enforcement**

The Securities and Exchange Commission shall establish a separate office within the Commission to administer and enforce the provisions of section 78u–6 of this title (as add[1] by section 922(a)).[2] Such office shall report annually to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives on its activities, whistleblower complaints, and the response of the Commission to such complaints.

(Pub. L. 111–203, title IX, § 924, July 21, 2010, 124 Stat. 1850.)

REFERENCES IN TEXT

This subtitle, referred to in subsecs. (a) to (c), means subtitle B (§§ 921–929Z) of title IX of Pub. L. 111–203.

Section 922(a), referred to in subsec. (d), means section 922(a) of Pub. L. 111–203.

CODIFICATION

Section was enacted as part of the Investor Protection and Securities Reform Act of 2010, and also as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and not as part of the Securities Exchange Act of 1934 which comprises this chapter.

EFFECTIVE DATE

Section effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as a note under section 5301 of Title 12, Banks and Banking.

DEFINITIONS

For definitions of "Commission" and "securities laws" as used in this section, see section 5301 of Title 12, Banks and Banking.

[1] So in original. Probably should be "added".
[2] See References in Text note below.

## § 78v. Hearings by Commission

Hearings may be public and may be held before the Commission, any member or members thereof, or any officer or officers of the Commission designated by it, and appropriate records thereof shall be kept.

(June 6, 1934, ch. 404, title I, § 22, 48 Stat. 901.)

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78w. Rules, regulations, and orders; annual reports

**(a) Power to make rules and regulations; considerations; public disclosure**

(1) The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title shall each have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which they are responsible or for the execution of the functions vested in them by this chapter, and may for such purposes classify persons, securities, transactions, statements, applications, reports, and other matters within their respective jurisdictions, and prescribe greater, lesser, or different requirements for different classes thereof. No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation, or order of the Commission, the Board of Governors of the Federal Reserve System, other agency enumerated in section 78c(a)(34) of this title, or any self-regulatory organization, notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason.

(2) The Commission and the Secretary of the Treasury, in making rules and regulations pursuant to any provisions of this chapter, shall consider among other matters the impact any such rule or regulation would have on competition. The Commission and the Secretary of the Treasury shall not adopt any such rule or regulation which would impose a burden on competition not necessary or appropriate in furtherance of the purposes of this chapter. The Commission and the Secretary of the Treasury shall include in the statement of basis and purpose incorporated in any rule or regulation adopted under this chapter, the reasons for the Commission's or the Secretary's determination that any burden on competition imposed by such rule or regulation is necessary or appropriate in furtherance of the purposes of this chapter.

(3) The Commission and the Secretary, in making rules and regulations pursuant to any provision of this chapter, considering any application for registration in accordance with section 78s(a) of this title, or reviewing any proposed rule change of a self-regulatory organization in accordance with section 78s(b) of this title, shall keep in a public file and make available for copying all written statements filed

(A) Revoking, suspending or placing limitations on the registration, activities, functions, or operations of a broker or dealer;

(B) Suspending, barring, or placing limitations on the association, activities, or functions of an associated person of a broker or dealer;

(C) Suspending or expelling any person from membership or participation in a self-regulatory organization; or

(D) Suspending or barring any person from being associated with a member of a national securities exchange or registered securities association;

(ii) Any conviction of injunction of a type described in section 15(b)(4) (B) or (C) of the Act; or

(iii) A failure under the provisions of Rule G–4 of the Municipal Securities Rulemaking Board under the Act, to meet qualifications standards, and such failure may be remedied by a finding or determination by the Commission pursuant to such rule(s) that the person affected nevertheless meets such standards.

(2) The term *control* shall mean the power to direct or cause the direction of the management or policies of a company whether through ownership of securities, by contract or otherwise; *Provided, however,* That

(i) Any person who, directly or indirectly, (A) has the right to vote 10 percent or more of the voting securities, (B) is entitled to receive 10 percent or more of the net profits, or (C) is a director (or person occupying a similar status or performing similar functions) of a company shall be presumed to be a person who controls such company;

(ii) Any person not covered by paragraph (i) shall be presumed not to be a person who controls such company; and

(iii) Any presumption may be rebutted on an appropriate showing.

(g) Where it deems appropriate to do so, the Commission may determine whether to (1) direct, pursuant to section 6(c)(2), 15A(g)(2) or 17A(b)(4)(A) of the Act, that a proposed admission covered by a notice filed pursuant to paragraph (a) of this section shall be denied or an order barring a proposed association issued or (2) grant or deny an application filed pursuant to paragraph (d) of this section on the basis of the notice or application filed by the self-regulatory organization, the person subject to the disqualification, or other applicant (such as the proposed employer) on behalf of such person, without oral hearing. Any request for oral hearing or argument should be submitted with the notice or application.

(h) The Rules of Practice (17 CFR part 201) shall apply to proceedings under this rule to the extent that they are not inconsistent with this rule.

(15 U.S.C. 78a *et seq.*, as amended by Pub. L. 94–29 (June 4, 1975) and by Pub. L. 98–38 (June 6, 1983), particularly secs. 11A, 15, 19 and 23 thereof (15 U.S.C. 78k–1, 78*o*, 78s and 78w))

[46 FR 58661, Dec. 3, 1981, as amended at 48 FR 53691, Nov. 29, 1983]

SECURITIES WHISTLEBLOWER INCENTIVES AND PROTECTIONS

SOURCE: Sections 240.21F–1 through 240.21F–17 appear at 76 FR 34363, June 13, 2011.

§240.21F–1  General.

Section 21F of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. 78u-6), entitled "Securities Whistleblower Incentives and Protection," requires the Securities and Exchange Commission ("Commission") to pay awards, subject to certain limitations and conditions, to whistleblowers who provide the Commission with original information about violations of the Federal securities laws. These rules describe the whistleblower program that the Commission has established to implement the provisions of Section 21F, and explain the procedures you will need to follow in order to be eligible for an award. You should read these procedures carefully because the failure to take certain required steps within the time frames described in these rules may disqualify you from receiving an award for which you otherwise may be eligible. Unless expressly provided for in these rules, no person is authorized to make any offer or promise, or otherwise to bind the Commission with respect to the payment of any award or the amount thereof. The Securities and Exchange Commission's Office of the Whistleblower administers our whistleblower program. Questions about the program or these rules should be directed to the SEC Office of

the Whistleblower, 100 F Street, NE., Washington, DC 20549–5631.

### § 240.21F–2 Whistleblower status and retaliation protection.

(a) *Definition of a whistleblower.* (1) You are a whistleblower if, alone or jointly with others, you provide the Commission with information pursuant to the procedures set forth in § 240.21F–9(a) of this chapter, and the information relates to a possible violation of the Federal securities laws (including any rules or regulations thereunder) that has occurred, is ongoing, or is about to occur. A whistleblower must be an individual. A company or another entity is not eligible to be a whistleblower.

(2) To be eligible for an award, you must submit original information to the Commission in accordance with the procedures and conditions described in §§ 240.21F–4, 240.21F–8, and 240.21F–9 of this chapter.

(b) *Prohibition against retaliation.* (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u–6(h)(1)), you are a whistleblower if:

(i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

(ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u–6(h)(1)(A)).

(iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

(2) Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u–6(h)(1)), including any rules promulgated thereunder, shall be enforceable in an action or proceeding brought by the Commission.

### § 240.21F–3 Payment of awards.

(a) *Commission actions:* Subject to the eligibility requirements described in §§ 240.21F–2, 240.21F–8, and 240.21F–16 of this chapter, the Commission will pay an award or awards to one or more whistleblowers who:

(1) Voluntarily provide the Commission

(2) With original information

(3) That leads to the successful enforcement by the Commission of a Federal court or administrative action

(4) In which the Commission obtains monetary sanctions totaling more than $1,000,000.

NOTE TO PARAGRAPH (a): The terms *voluntarily, original information, leads to successful enforcement, action,* and *monetary sanctions* are defined in § 240.21F–4 of this chapter.

(b) *Related actions:* The Commission will also pay an award based on amounts collected in certain related actions.

(1) A *related action* is a judicial or administrative action that is brought by:

(i) The Attorney General of the United States;

(ii) An appropriate regulatory authority;

(iii) A self-regulatory organization; or

(iv) A state attorney general in a criminal case, and is based on the same original information that the whistleblower voluntarily provided to the Commission, and that led the Commission to obtain monetary sanctions totaling more than $1,000,000.

NOTE TO PARAGRAPH (b)(1): The terms *appropriate regulatory authority* and *self-regulatory organization* are defined in § 240.21F–4 of this chapter.

(2) In order for the Commission to make an award in connection with a related action, the Commission must determine that the same original information that the whistleblower gave to the Commission also led to the successful enforcement of the related action under the same criteria described in these rules for awards made in connection with Commission actions. The Commission may seek assistance and confirmation from the authority bringing the related action in making this determination. The Commission will deny an award in connection with the related action if:

(i) The Commission determines that the criteria for an award are not satisfied; or

(ii) The Commission is unable to make a determination because the Office of the Whistleblower could not obtain sufficient and reliable information that could be used as the basis for an award determination pursuant to §240.21F–12(a) of this chapter. Additional procedures apply to the payment of awards in related actions. These procedures are described in §§240.21F–11 and 240.21F–14 of this chapter.

(3) The Commission will not make an award to you for a related action if you have already been granted an award by the Commodity Futures Trading Commission (''CFTC'') for that same action pursuant to its whistleblower award program under Section 23 of the Commodity Exchange Act (7 U.S.C. 26). Similarly, if the CFTC has previously denied an award to you in a related action, you will be precluded from relitigating any issues before the Commission that the CFTC resolved against you as part of the award denial.

**§240.21F–4  Other definitions.**

(a) *Voluntary submission of information.* (1) Your submission of information is made *voluntarily* within the meaning of §§240.21F–1 through 240.21F–17 of this chapter if you provide your submission before a request, inquiry, or demand that relates to the subject matter of your submission is directed to you or anyone representing you (such as an attorney):

(i) By the Commission;

(ii) In connection with an investigation, inspection, or examination by the Public Company Accounting Oversight Board, or any self-regulatory organization; or

(iii) In connection with an investigation by Congress, any other authority of the Federal government, or a state Attorney General or securities regulatory authority.

(2) If the Commission or any of these other authorities direct a request, inquiry, or demand as described in paragraph (a)(1) of this section to you or your representative first, your submission will not be considered voluntary, and you will not be eligible for an award, even if your response is not compelled by subpoena or other applicable law. However, your submission of information to the Commission will be considered voluntary if you voluntarily provided the same information to one of the other authorities identified above prior to receiving a request, inquiry, or demand from the Commission.

(3) In addition, your submission will not be considered voluntary if you are required to report your original information to the Commission as a result of a pre-existing legal duty, a contractual duty that is owed to the Commission or to one of the other authorities set forth in paragraph (a)(1) of this section, or a duty that arises out of a judicial or administrative order.

(b) *Original information.* (1) In order for your whistleblower submission to be considered *original information,* it must be:

(i) Derived from your independent knowledge or independent analysis;

(ii) Not already known to the Commission from any other source, unless you are the original source of the information;

(iii) Not exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, unless you are a source of the information; and

(iv) Provided to the Commission for the first time after July 21, 2010 (the date of enactment of the *Dodd-Frank Wall Street Reform and Consumer Protection Act*).

(2) *Independent knowledge* means factual information in your possession that is not derived from publicly available sources. You may gain independent knowledge from your experiences, communications and observations in your business or social interactions.

(3) *Independent analysis* means your own analysis, whether done alone or in combination with others. *Analysis* means your examination and evaluation of information that may be publicly available, but which reveals information that is not generally known or available to the public.

(4) The Commission will not consider information to be derived from your independent knowledge or independent analysis in any of the following circumstances:

(i) If you obtained the information through a communication that was subject to the attorney-client privilege, unless disclosure of that information would otherwise be permitted by an attorney pursuant to § 205.3(d)(2) of this chapter, the applicable state attorney conduct rules, or otherwise;

(ii) If you obtained the information in connection with the legal representation of a client on whose behalf you or your employer or firm are providing services, and you seek to use the information to make a whistleblower submission for your own benefit, unless disclosure would otherwise be permitted by an attorney pursuant to § 205.3(d)(2) of this chapter, the applicable state attorney conduct rules, or otherwise; or

(iii) In circumstances not covered by paragraphs (b)(4)(i) or (b)(4)(ii) of this section, if you obtained the information because you were:

(A) An officer, director, trustee, or partner of an entity and another person informed you of allegations of misconduct, or you learned the information in connection with the entity's processes for identifying, reporting, and addressing possible violations of law;

(B) An employee whose principal duties involve compliance or internal audit responsibilities, or you were employed by or otherwise associated with a firm retained to perform compliance or internal audit functions for an entity;

(C) Employed by or otherwise associated with a firm retained to conduct an inquiry or investigation into possible violations of law; or

(D) An employee of, or other person associated with, a public accounting firm, if you obtained the information through the performance of an engagement required of an independent public accountant under the Federal securities laws (other than an audit subject to § 240.21F–8(c)(4) of this chapter), and that information related to a violation by the engagement client or the client's directors, officers or other employees.

(iv) If you obtained the information by a means or in a manner that is determined by a United States court to violate applicable Federal or state criminal law; or

(v) *Exceptions.* Paragraph (b)(4)(iii) of this section shall not apply if:

(A) You have a reasonable basis to believe that disclosure of the information to the Commission is necessary to prevent the relevant entity from engaging in conduct that is likely to cause substantial injury to the financial interest or property of the entity or investors;

(B) You have a reasonable basis to believe that the relevant entity is engaging in conduct that will impede an investigation of the misconduct; or

(C) At least 120 days have elapsed since you provided the information to the relevant entity's audit committee, chief legal officer, chief compliance officer (or their equivalents), or your supervisor, or since you received the information, if you received it under circumstances indicating that the entity's audit committee, chief legal officer, chief compliance officer (or their equivalents), or your supervisor was already aware of the information.

(vi) If you obtained the information from a person who is subject to this section, unless the information is not excluded from that person's use pursuant to this section, or you are providing the Commission with information about possible violations involving that person.

(5) The Commission will consider you to be an *original source* of the same information that we obtain from another source if the information satisfies the definition of original information and the other source obtained the information from you or your representative. In order to be considered an original source of information that the Commission receives from Congress, any other authority of the Federal government, a state Attorney General or securities regulatory authority, any self-regulatory organization, or the Public Company Accounting Oversight Board, you must have voluntarily given such authorities the information within the meaning of these rules. You must establish your status as the original source of information to the Commission's satisfaction. In determining whether you are the original source of information, the Commission may seek

**Securities and Exchange Commission**                    **§ 240.21F–4**

assistance and confirmation from one of the other authorities described above, or from another entity (including your employer), in the event that you claim to be the original source of information that an authority or another entity provided to the Commission.

(6) If the Commission already knows some information about a matter from other sources at the time you make your submission, and you are not an original source of that information under paragraph (b)(5) of this section, the Commission will consider you an original source of any information you provide that is derived from your independent knowledge or analysis and that materially adds to the information that the Commission already possesses.

(7) If you provide information to the Congress, any other authority of the Federal government, a state Attorney General or securities regulatory authority, any self-regulatory organization, or the Public Company Accounting Oversight Board, or to an entity's internal whistleblower, legal, or compliance procedures for reporting allegations of possible violations of law, and you, within 120 days, submit the same information to the Commission pursuant to § 240.21F–9 of this chapter, as you must do in order for you to be eligible to be considered for an award, then, for purposes of evaluating your claim to an award under §§ 240.21F–10 and 240.21F–11 of this chapter, the Commission will consider that you provided information as of the date of your original disclosure, report or submission to one of these other authorities or persons. You must establish the effective date of any prior disclosure, report, or submission, to the Commission's satisfaction. The Commission may seek assistance and confirmation from the other authority or person in making this determination.

(c) *Information that leads to successful enforcement.* The Commission will consider that you provided original information that led to the successful enforcement of a judicial or administrative action in any of the following circumstances:

(1) You gave the Commission original information that was sufficiently spe-

cific, credible, and timely to cause the staff to commence an examination, open an investigation, reopen an investigation that the Commission had closed, or to inquire concerning different conduct as part of a current examination or investigation, and the Commission brought a successful judicial or administrative action based in whole or in part on conduct that was the subject of your original information; or

(2) You gave the Commission original information about conduct that was already under examination or investigation by the Commission, the Congress, any other authority of the Federal government, a state Attorney General or securities regulatory authority, any self-regulatory organization, or the PCAOB (except in cases where you were an original source of this information as defined in paragraph (b)(4) of this section), and your submission significantly contributed to the success of the action.

(3) You reported original information through an entity's internal whistleblower, legal, or compliance procedures for reporting allegations of possible violations of law before or at the same time you reported them to the Commission; the entity later provided your information to the Commission, or provided results of an audit or investigation initiated in whole or in part in response to information you reported to the entity; and the information the entity provided to the Commission satisfies either paragraph (c)(1) or (c)(2) of this section. Under this paragraph (c)(3), you must also submit the same information to the Commission in accordance with the procedures set forth in § 240.21F–9 within 120 days of providing it to the entity.

(d) An *action* generally means a single captioned judicial or administrative proceeding brought by the Commission. Notwithstanding the foregoing:

(1) For purposes of making an award under § 240.21F–10 of this chapter, the Commission will treat as a Commission action two or more administrative or judicial proceedings brought by the Commission if these proceedings arise out of the same nucleus of operative facts; or

643

**Add. 10**

(2) For purposes of determining the payment on an award under § 240.21F–14 of this chapter, the Commission will deem as part of the Commission action upon which the award was based any subsequent Commission proceeding that, individually, results in a monetary sanction of $1,000,000 or less, and that arises out of the same nucleus of operative facts.

(e) *Monetary sanctions* means any money, including penalties, disgorgement, and interest, ordered to be paid and any money deposited into a disgorgement fund or other fund pursuant to Section 308(b) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(b)) as a result of a Commission action or a related action.

(f) *Appropriate regulatory agency* means the Commission, the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, and any other agencies that may be defined as appropriate regulatory agencies under Section 3(a)(34) of the Exchange Act (15 U.S.C. 78c(a)(34)).

(g) *Appropriate regulatory authority* means an appropriate regulatory agency other than the Commission.

(h) *Self-regulatory organization* means any national securities exchange, registered securities association, registered clearing agency, the Municipal Securities Rulemaking Board, and any other organizations that may be defined as self-regulatory organizations under Section 3(a)(26) of the Exchange Act (15 U.S.C. 78c(a)(26)).

### § 240.21F–5   Amount of award.

(a) The determination of the amount of an award is in the discretion of the Commission.

(b) If all of the conditions are met for a whistleblower award in connection with a Commission action or a related action, the Commission will then decide the percentage amount of the award applying the criteria set forth in § 240.21F–6 of this chapter and pursuant to the procedures set forth in §§ 240.21F–10 and 240.21F–11 of this chapter. The amount will be at least 10 percent and no more than 30 percent of the monetary sanctions that the Commis-

sion and the other authorities are able to collect. The percentage awarded in connection with a Commission action may differ from the percentage awarded in connection with a related action.

(c) If the Commission makes awards to more than one whistleblower in connection with the same action or related action, the Commission will determine an individual percentage award for each whistleblower, but in no event will the total amount awarded to all whistleblowers in the aggregate be less than 10 percent or greater than 30 percent of the amount the Commission or the other authorities collect.

### § 240.21F–6   Criteria for determining amount of award.

In exercising its discretion to determine the appropriate award percentage, the Commission may consider the following factors in relation to the unique facts and circumstances of each case, and may increase or decrease the award percentage based on its analysis of these factors. In the event that awards are determined for multiple whistleblowers in connection with an action, these factors will be used to determine the relative allocation of awards among the whistleblowers.

(a) *Factors that may increase the amount of a whistleblower's award.* In determining whether to increase the amount of an award, the Commission will consider the following factors, which are not listed in order of importance.

(1) *Significance of the information provided by the whistleblower.* The Commission will assess the significance of the information provided by a whistleblower to the success of the Commission action or related action. In considering this factor, the Commission may take into account, among other things:

(i) The nature of the information provided by the whistleblower and how it related to the successful enforcement action, including whether the reliability and completeness of the information provided to the Commission by the whistleblower resulted in the conservation of Commission resources;

(ii) The degree to which the information provided by the whistleblower supported one or more successful claims

644

brought in the Commission or related action.

(2) *Assistance provided by the whistle-blower.* The Commission will assess the degree of assistance provided by the whistleblower and any legal representative of the whistleblower in the Commission action or related action. In considering this factor, the Commission may take into account, among other things:

(i) Whether the whistleblower provided ongoing, extensive, and timely cooperation and assistance by, for example, helping to explain complex transactions, interpreting key evidence, or identifying new and productive lines of inquiry;

(ii) The timeliness of the whistleblower's initial report to the Commission or to an internal compliance or reporting system of business organizations committing, or impacted by, the securities violations, where appropriate;

(iii) The resources conserved as a result of the whistleblower's assistance;

(iv) Whether the whistleblower appropriately encouraged or authorized others to assist the staff of the Commission who might otherwise not have participated in the investigation or related action;

(v) The efforts undertaken by the whistleblower to remediate the harm caused by the violations, including assisting the authorities in the recovery of the fruits and instrumentalities of the violations; and

(vi) Any unique hardships experienced by the whistleblower as a result of his or her reporting and assisting in the enforcement action.

(3) *Law enforcement interest.* The Commission will assess its programmatic interest in deterring violations of the securities laws by making awards to whistleblowers who provide information that leads to the successful enforcement of such laws. In considering this factor, the Commission may take into account, among other things:

(i) The degree to which an award enhances the Commission's ability to enforce the Federal securities laws and protect investors; and

(ii) The degree to which an award encourages the submission of high quality information from whistleblowers by

appropriately rewarding whistle-blowers' submission of significant information and assistance, even in cases where the monetary sanctions available for collection are limited or potential monetary sanctions were reduced or eliminated by the Commission because an entity self-reported a securities violation following the whistleblower's related internal disclosure, report, or submission.

(iii) Whether the subject matter of the action is a Commission priority, whether the reported misconduct involves regulated entities or fiduciaries, whether the whistleblower exposed an industry-wide practice, the type and severity of the securities violations, the age and duration of misconduct, the number of violations, and the isolated, repetitive, or ongoing nature of the violations; and

(iv) The dangers to investors or others presented by the underlying violations involved in the enforcement action, including the amount of harm or potential harm caused by the underlying violations, the type of harm resulting from or threatened by the underlying violations, and the number of individuals or entities harmed.

(4) *Participation in internal compliance systems.* The Commission will assess whether, and the extent to which, the whistleblower and any legal representative of the whistleblower participated in internal compliance systems. In considering this factor, the Commission may take into account, among other things:

(i) Whether, and the extent to which, a whistleblower reported the possible securities violations through internal whistleblower, legal or compliance procedures before, or at the same time as, reporting them to the Commission; and

(ii) Whether, and the extent to which, a whistleblower assisted any internal investigation or inquiry concerning the reported securities violations.

(b) *Factors that may decrease the amount of a whistleblower's award.* In determining whether to decrease the amount of an award, the Commission will consider the following factors, which are not listed in order of importance.

(1) *Culpability.* The Commission will assess the culpability or involvement

645

of the whistleblower in matters associated with the Commission's action or related actions. In considering this factor, the Commission may take into account, among other things:

(i) The whistleblower's role in the securities violations;

(ii) The whistleblower's education, training, experience, and position of responsibility at the time the violations occurred;

(iii) Whether the whistleblower acted with scienter, both generally and in relation to others who participated in the violations;

(iv) Whether the whistleblower financially benefitted from the violations;

(v) Whether the whistleblower is a recidivist;

(vi) The egregiousness of the underlying fraud committed by the whistleblower; and

(vii) Whether the whistleblower knowingly interfered with the Commission's investigation of the violations or related enforcement actions.

(2) *Unreasonable reporting delay.* The Commission will assess whether the whistleblower unreasonably delayed reporting the securities violations. In considering this factor, the Commission may take into account, among other things:

(i) Whether the whistleblower was aware of the relevant facts but failed to take reasonable steps to report or prevent the violations from occurring or continuing;

(ii) Whether the whistleblower was aware of the relevant facts but only reported them after learning about a related inquiry, investigation, or enforcement action; and

(iii) Whether there was a legitimate reason for the whistleblower to delay reporting the violations.

(3) *Interference with internal compliance and reporting systems.* The Commission will assess, in cases where the whistleblower interacted with his or her entity's internal compliance or reporting system, whether the whistleblower undermined the integrity of such system. In considering this factor, the Commission will take into account whether there is evidence provided to the Commission that the whistleblower knowingly:

(i) Interfered with an entity's established legal, compliance, or audit procedures to prevent or delay detection of the reported securities violation;

(ii) Made any material false, fictitious, or fraudulent statements or representations that hindered an entity's efforts to detect, investigate, or remediate the reported securities violations; and

(iii) Provided any false writing or document knowing the writing or document contained any false, fictitious or fraudulent statements or entries that hindered an entity's efforts to detect, investigate, or remediate the reported securities violations.

§ 240.21F–7　Confidentiality of submissions.

(a) Section 21F(h)(2) of the Exchange Act (15 U.S.C. 78u–6(h)(2)) requires that the Commission not disclose information that could reasonably be expected to reveal the identity of a whistleblower, except that the Commission may disclose such information in the following circumstances:

(1) When disclosure is required to a defendant or respondent in connection with a Federal court or administrative action that the Commission files or in another public action or proceeding that is filed by an authority to which we provide the information, as described below;

(2) When the Commission determines that it is necessary to accomplish the purposes of the Exchange Act (15 U.S.C. 78a) and to protect investors, it may provide your information to the Department of Justice, an appropriate regulatory authority, a self regulatory organization, a state attorney general in connection with a criminal investigation, any appropriate state regulatory authority, the Public Company Accounting Oversight Board, or foreign securities and law enforcement authorities. Each of these entities other than foreign securities and law enforcement authorities is subject to the confidentiality requirements set forth in Section 21F(h) of the Exchange Act (15 U.S.C. 78u–6(h)). The Commission will

**Securities and Exchange Commission**                                    **§ 240.21F–8**

determine what assurances of confidentiality it deems appropriate in providing such information to foreign securities and law enforcement authorities.

(3) The Commission may make disclosures in accordance with the Privacy Act of 1974 (5 U.S.C. 552a).

(b) You may submit information to the Commission anonymously. If you do so, however, you must also do the following:

(1) You must have an attorney represent you in connection with both your submission of information and your claim for an award, and your attorney's name and contact information must be provided to the Commission at the time you submit your information;

(2) You and your attorney must follow the procedures set forth in § 240.21F–9 of this chapter for submitting original information anonymously; and

(3) Before the Commission will pay any award to you, you must disclose your identity to the Commission and your identity must be verified by the Commission as set forth in § 240.21F–10 of this chapter.

**§ 240.21F–8  Eligibility.**

(a) To be eligible for a whistleblower award, you must give the Commission information in the form and manner that the Commission requires. The procedures for submitting information and making a claim for an award are described in § 240.21F–9 through § 240.21F–11 of this chapter. You should read these procedures carefully because you need to follow them in order to be eligible for an award, except that the Commission may, in its sole discretion, waive any of these procedures based upon a showing of extraordinary circumstances.

(b) In addition to any forms required by these rules, the Commission may also require that you provide certain additional information. You may be required to:

(1) Provide explanations and other assistance in order that the staff may evaluate and use the information that you submitted;

(2) Provide all additional information in your possession that is related to the subject matter of your submission in a complete and truthful manner, through follow-up meetings, or in other forms that our staff may agree to;

(3) Provide testimony or other evidence acceptable to the staff relating to whether you are eligible, or otherwise satisfy any of the conditions, for an award; and

(4) Enter into a confidentiality agreement in a form acceptable to the Office of the Whistleblower, covering any non-public information that the Commission provides to you, and including a provision that a violation of the agreement may lead to your ineligibility to receive an award.

(c) You are not eligible to be considered for an award if you do not satisfy the requirements of paragraphs (a) and (b) of this section. In addition, you are not eligible if:

(1) You are, or were at the time you acquired the original information provided to the Commission, a member, officer, or employee of the Commission, the Department of Justice, an appropriate regulatory agency, a self-regulatory organization, the Public Company Accounting Oversight Board, or any law enforcement organization;

(2) You are, or were at the time you acquired the original information provided to the Commission, a member, officer, or employee of a foreign government, any political subdivision, department, agency, or instrumentality of a foreign government, or any other foreign financial regulatory authority as that term is defined in Section 3(a)(52) of the Exchange Act (15 U.S.C. 78c(a)(52));

(3) You are convicted of a criminal violation that is related to the Commission action or to a related action (as defined in § 240.21F–4 of this chapter) for which you otherwise could receive an award;

(4) You obtained the original information that you gave the Commission through an audit of a company's financial statements, and making a whistleblower submission would be contrary to requirements of Section 10A of the Exchange Act (15 U.S.C. 78j-a).

(5) You are the spouse, parent, child, or sibling of a member or employee of the Commission, or you reside in the same household as a member or employee of the Commission;

**Add. 14**

(6) You acquired the original information you gave the Commission from a person:

(i) Who is subject to paragraph (c)(4) of this section, unless the information is not excluded from that person's use, or you are providing the Commission with information about possible violations involving that person; or

(ii) With the intent to evade any provision of these rules; or

(7) In your whistleblower submission, your other dealings with the Commission, or your dealings with another authority in connection with a related action, you knowingly and willfully make any false, fictitious, or fraudulent statement or representation, or use any false writing or document knowing that it contains any false, fictitious, or fraudulent statement or entry with intent to mislead or otherwise hinder the Commission or another authority.

### § 240.21F–9 Procedures for submitting original information.

(a) To be considered a whistleblower under Section 21F of the Exchange Act (15 U.S.C. 78u–6(h)), you must submit your information about a possible securities law violation by either of these methods:

(1) Online, through the Commission's Web site located at *http://www.sec.gov;* or

(2) By mailing or faxing a Form TCR (Tip, Complaint or Referral) (referenced in § 249.1800 of this chapter) to the SEC Office of the Whistleblower, 100 F Street NE., Washington, DC 20549–5631, Fax (703) 813–9322.

(b) Further, to be eligible for an award, you must declare under penalty of perjury at the time you submit your information pursuant to paragraph (a)(1) or (2) of this section that your information is true and correct to the best of your knowledge and belief.

(c) Notwithstanding paragraphs (a) and (b) of this section, if you are providing your original information to the Commission anonymously, then your attorney must submit your information on your behalf pursuant to the procedures specified in paragraph (a) of this section. Prior to your attorney's submission, you must provide your attorney with a completed Form TCR

(referenced in § 249.1800 of this chapter) that you have signed under penalty of perjury. When your attorney makes her submission on your behalf, your attorney will be required to certify that he or she:

(1) Has verified your identity;

(2) Has reviewed your completed and signed Form TCR (referenced in § 249.1800 of this chapter) for completeness and accuracy and that the information contained therein is true, correct and complete to the best of the attorney's knowledge, information and belief;

(3) Has obtained your non-waivable consent to provide the Commission with your original completed and signed Form TCR (referenced in § 249.1800 of this chapter) in the event that the Commission requests it due to concerns that you may have knowingly and willfully made false, fictitious, or fraudulent statements or representations, or used any false writing or document knowing that the writing or document contains any false fictitious or fraudulent statement or entry; and

(4) Consents to be legally obligated to provide the signed Form TCR (referenced in § 249.1800 of this chapter) within seven (7) calendar days of receiving such request from the Commission.

(d) If you submitted original information in writing to the Commission after July 21, 2010 (the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act) but before the effective date of these rules, your submission will be deemed to satisfy the requirements set forth in paragraphs (a) and (b) of this section. If you were an anonymous whistleblower, however, you must provide your attorney with a completed and signed copy of Form TCR (referenced in § 249.1800 of this chapter) within 60 days of the effective date of these rules, your attorney must retain the signed form in his or her records, and you must provide of copy of the signed form to the Commission staff upon request by Commission staff prior to any payment of an award to you in connection with your submission. Notwithstanding the foregoing, you must follow the procedures and conditions for making a claim for a whistleblower award described in

648

**Add. 15**

§§ 240.21F–10 and 240.21F–11 of this chapter.

**§ 240.21F–10  Procedures for making a claim for a whistleblower award in SEC actions that result in monetary sanctions in excess of $1,000,000.**

(a) Whenever a Commission action results in monetary sanctions totaling more than $1,000,000, the Office of the Whistleblower will cause to be published on the Commission's Web site a "Notice of Covered Action." Such Notice will be published subsequent to the entry of a final judgment or order that alone, or collectively with other judgments or orders previously entered in the Commission action, exceeds $1,000,000; or, in the absence of such judgment or order subsequent to the deposit of monetary sanctions exceeding $1,000,000 into a disgorgement or other fund pursuant to Section 308(b) of the Sarbanes-Oxley Act of 2002. A claimant will have ninety (90) days from the date of the Notice of Covered Action to file a claim for an award based on that action, or the claim will be barred.

(b) To file a claim for a whistleblower award, you must file Form WB–APP, *Application for Award for Original Information Provided Pursuant to Section 21F of the Securities Exchange Act of 1934* (referenced in § 249.1801 of this chapter). You must sign this form as the claimant and submit it to the Office of the Whistleblower by mail or fax. All claim forms, including any attachments, must be received by the Office of the Whistleblower within ninety (90) calendar days of the date of the Notice of Covered Action in order to be considered for an award.

(c) If you provided your original information to the Commission anonymously, you must disclose your identity on the Form WB–APP (referenced in § 249.1801 of this chapter), and your identity must be verified in a form and manner that is acceptable to the Office of the Whistleblower prior to the payment of any award.

(d) Once the time for filing any appeals of the Commission's judicial or administrative action has expired, or where an appeal has been filed, after all appeals in the action have been concluded, the staff designated by the Director of the Division of Enforcement ("Claims Review Staff") will evaluate all timely whistleblower award claims submitted on Form WB–APP (referenced in § 249.1801 of this chapter) in accordance with the criteria set forth in these rules. In connection with this process, the Office of the Whistleblower may require that you provide additional information relating to your eligibility for an award or satisfaction of any of the conditions for an award, as set forth in § 240.21F–(8)(b) of this chapter. Following that evaluation, the Office of the Whistleblower will send you a Preliminary Determination setting forth a preliminary assessment as to whether the claim should be allowed or denied and, if allowed, setting forth the proposed award percentage amount.

(e) You may contest the Preliminary Determination made by the Claims Review Staff by submitting a written response to the Office of the Whistleblower setting forth the grounds for your objection to either the denial of an award or the proposed amount of an award. The response must be in the form and manner that the Office of the Whistleblower shall require. You may also include documentation or other evidentiary support for the grounds advanced in your response.

(1) Before determining whether to contest a Preliminary Determination, you may:

(i) Within thirty (30) days of the date of the Preliminary Determination, request that the Office of the Whistleblower make available for your review the materials from among those set forth in § 240.21F–12(a) of this chapter that formed the basis of the Claims Review Staff's Preliminary Determination.

(ii) Within thirty (30) calendar days of the date of the Preliminary Determination, request a meeting with the Office of the Whistleblower; however, such meetings are not required and the office may in its sole discretion decline the request.

(2) If you decide to contest the Preliminary Determination, you must submit your written response and supporting materials within sixty (60) calendar days of the date of the Preliminary Determination, or if a request to review materials is made pursuant to

649

**Add. 16**

paragraph (e)(1) of this section, then within sixty (60) calendar days of the Office of the Whistleblower making those materials available for your review.

(f) If you fail to submit a timely response pursuant to paragraph (e) of this section, then the Preliminary Determination will become the Final Order of the Commission (except where the Preliminary Determination recommended an award, in which case the Preliminary Determination will be deemed a Proposed Final Determination for purposes of paragraph (h) of this section). Your failure to submit a timely response contesting a Preliminary Determination will constitute a failure to exhaust administrative remedies, and you will be prohibited from pursuing an appeal pursuant to § 240.21F–13 of this chapter.

(g) If you submit a timely response pursuant to paragraph (e) of this section, then the Claims Review Staff will consider the issues and grounds advanced in your response, along with any supporting documentation you provided, and will make its Proposed Final Determination.

(h) The Office of the Whistleblower will then notify the Commission of each Proposed Final Determination. Within thirty 30 days thereafter, any Commissioner may request that the Proposed Final Determination be reviewed by the Commission. If no Commissioner requests such a review within the 30-day period, then the Proposed Final Determination will become the Final Order of the Commission. In the event a Commissioner requests a review, the Commission will review the record that the staff relied upon in making its determinations, including your previous submissions to the Office of the Whistleblower, and issue its Final Order.

(i) The Office of the Whistleblower will provide you with the Final Order of the Commission.

## § 240.21F–11 Procedures for determining awards based upon a related action.

(a) If you are eligible to receive an award following a Commission action that results in monetary sanctions totaling more than $1,000,000, you also

may be eligible to receive an award based on the monetary sanctions that are collected from a related action (as defined in § 240.21F–3 of this chapter).

(b) You must also use Form WB–APP (referenced in § 249.1801 of this chapter) to submit a claim for an award in a related action. You must sign this form as the claimant and submit it to the Office of the Whistleblower by mail or fax as follows:

(1) If a final order imposing monetary sanctions has been entered in a related action at the time you submit your claim for an award in connection with a Commission action, you must submit your claim for an award in that related action on the same Form WB–APP (referenced in § 249.1801 of this chapter) that you use for the Commission action.

(2) If a final order imposing monetary sanctions in a related action has not been entered at the time you submit your claim for an award in connection with a Commission action, you must submit your claim on Form WB–APP (referenced in § 249.1801 of this chapter) within ninety (90) days of the issuance of a final order imposing sanctions in the related action.

(c) The Office of the Whistleblower may request additional information from you in connection with your claim for an award in a related action to demonstrate that you directly (or through the Commission) voluntarily provided the governmental agency, regulatory authority or self-regulatory organization the same original information that led to the Commission's successful covered action, and that this information led to the successful enforcement of the related action. The Office of the Whistleblower may, in its discretion, seek assistance and confirmation from the other agency in making this determination.

(d) Once the time for filing any appeals of the final judgment or order in a related action has expired, or if an appeal has been filed, after all appeals in the action have been concluded, the Claims Review Staff will evaluate all timely whistleblower award claims submitted on Form WB–APP (referenced in § 249.1801 of this chapter) in connection with the related action.

The evaluation will be undertaken pursuant to the criteria set forth in these rules. In connection with this process, the Office of the Whistleblower may require that you provide additional information relating to your eligibility for an award or satisfaction of any of the conditions for an award, as set forth in §240.21F–(8)(b) of this chapter. Following this evaluation, the Office of the Whistleblower will send you a Preliminary Determination setting forth a preliminary assessment as to whether the claim should be allowed or denied and, if allowed, setting forth the proposed award percentage amount.

(e) You may contest the Preliminary Determination made by the Claims Review Staff by submitting a written response to the Office of the Whistleblower setting forth the grounds for your objection to either the denial of an award or the proposed amount of an award. The response must be in the form and manner that the Office of the Whistleblower shall require. You may also include documentation or other evidentiary support for the grounds advanced in your response.

(1) Before determining whether to contest a Preliminary Determination, you may:

(i) Within thirty (30) days of the date of the Preliminary Determination, request that the Office of the Whistleblower make available for your review the materials from among those set forth in §240.21F–12(a) of this chapter that formed the basis of the Claims Review Staff's Preliminary Determination.

(ii) Within thirty (30) days of the date of the Preliminary Determination, request a meeting with the Office of the Whistleblower; however, such meetings are not required and the office may in its sole discretion decline the request.

(2) If you decide to contest the Preliminary Determination, you must submit your written response and supporting materials within sixty (60) calendar days of the date of the Preliminary Determination, or if a request to review materials is made pursuant to paragraph (e)(1)(i) of this section, then within sixty (60) calendar days of the Office of the Whistleblower making those materials available for your review.

(f) If you fail to submit a timely response pursuant to paragraph (e) of this section, then the Preliminary Determination will become the Final Order of the Commission (except where the Preliminary Determination recommended an award, in which case the Preliminary Determination will be deemed a Proposed Final Determination for purposes of paragraph (h) of this section). Your failure to submit a timely response contesting a Preliminary Determination will constitute a failure to exhaust administrative remedies, and you will be prohibited from pursuing an appeal pursuant to §240.21F–13 of this chapter.

(g) If you submit a timely response pursuant to paragraph (e) of this section, then the Claims Review Staff will consider the issues and grounds that you advanced in your response, along with any supporting documentation you provided, and will make its Proposed Final Determination.

(h) The Office of the Whistleblower will notify the Commission of each Proposed Final Determination. Within thirty 30 days thereafter, any Commissioner may request that the Proposed Final Determination be reviewed by the Commission. If no Commissioner requests such a review within the 30-day period, then the Proposed Final Determination will become the Final Order of the Commission. In the event a Commissioner requests a review, the Commission will review the record that the staff relied upon in making its determinations, including your previous submissions to the Office of the Whistleblower, and issue its Final Order.

(i) The Office of the Whistleblower will provide you with the Final Order of the Commission.

**§ 240.21F–12  Materials that may form the basis of an award determination and that may comprise the record on appeal.**

(a) The following items constitute the materials that the Commission and the Claims Review Staff may rely upon to make an award determination pursuant to §§240.21F–10 and 240.21F–11 of this chapter:

(1) Any publicly available materials from the covered action or related action, including:

(i) The complaint, notice of hearing, answers and any amendments thereto;

(ii) The final judgment, consent order, or final administrative order;

(iii) Any transcripts of the proceedings, including any exhibits;

(iv) Any items that appear on the docket; and

(v) Any appellate decisions or orders.

(2) The whistleblower's Form TCR (referenced in § 249.1800 of this chapter), including attachments, and other related materials provided by the whistleblower to assist the Commission with the investigation or examination;

(3) The whistleblower's Form WB–APP (referenced in § 249.1800 of this chapter), including attachments, and any other filings or submissions from the whistleblower in support of the award application;

(4) Sworn declarations (including attachments) from the Commission staff regarding any matters relevant to the award determination;

(5) With respect to an award claim involving a related action, any statements or other information that the entity provides or identifies in connection with an award determination, provided the entity has authorized the Commission to share the information with the claimant. (Neither the Commission nor the Claims Review Staff may rely upon information that the entity has not authorized the Commission to share with the claimant); and

(6) Any other documents or materials including sworn declarations from third-parties that are received or obtained by the Office of the Whistleblower to assist the Commission resolve the claimant's award application, including information related to the claimant's eligibility. (Neither the Commission nor the Claims Review Staff may rely upon information that the entity has not authorized the Commission to share with the claimant).

(b) These rules do not entitle claimants to obtain from the Commission any materials (including any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim) other than those listed in paragraph (a) of this section. Moreover, the Office of the Whistleblower may make redactions as nec-

essary to comply with any statutory restrictions, to protect the Commission's law enforcement and regulatory functions, and to comply with requests for confidential treatment from other law enforcement and regulatory authorities. The Office of the Whistleblower may also require you to sign a confidentiality agreement, as set forth in § 240.21F–(8)(b)(4) of this chapter, before providing these materials.

§ 240.21F–13 Appeals.

(a) Section 21F of the Exchange Act (15 U.S.C. 78u–6) commits determinations of whether, to whom, and in what amount to make awards to the Commission's discretion. A determination of whether or to whom to make an award may be appealed within 30 days after the Commission issues its final decision to the United States Court of Appeals for the District of Columbia Circuit, or to the circuit where the aggrieved person resides or has his principal place of business. Where the Commission makes an award based on the factors set forth in § 240.21F–6 of this chapter of not less than 10 percent and not more than 30 percent of the monetary sanctions collected in the Commission or related action, the Commission's determination regarding the amount of an award (including the allocation of an award as between multiple whistleblowers, and any factual findings, legal conclusions, policy judgments, or discretionary assessments involving the Commission's consideration of the factors in § 240.21F–6 of this chapter) is not appealable.

(b) The record on appeal shall consist of the Preliminary Determination, the Final Order of the Commission, and any other items from those set forth in § 240.21F–12(a) of this chapter that either the claimant or the Commission identifies for inclusion in the record. The record on appeal shall not include any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim (including the staff's Draft Final Determination in the event that the Commissioners reviewed the claim and issued the Final Order).

**§ 240.21F–14  Procedures applicable to the payment of awards.**

(a) Any award made pursuant to these rules will be paid from the Securities and Exchange Commission Investor Protection Fund (the "Fund").

(b) A recipient of a whistleblower award is entitled to payment on the award only to the extent that a monetary sanction is collected in the Commission action or in a related action upon which the award is based.

(c) Payment of a whistleblower award for a monetary sanction collected in a Commission action or related action shall be made following the later of:

(1) The date on which the monetary sanction is collected; or

(2) The completion of the appeals process for all whistleblower award claims arising from:

(i) The Notice of Covered Action, in the case of any payment of an award for a monetary sanction collected in a Commission action; or

(ii) The related action, in the case of any payment of an award for a monetary sanction collected in a related action.

(d) If there are insufficient amounts available in the Fund to pay the entire amount of an award payment within a reasonable period of time from the time for payment specified by paragraph (c) of this section, then subject to the following terms, the balance of the payment shall be paid when amounts become available in the Fund, as follows:

(1) Where multiple whistleblowers are owed payments from the Fund based on awards that do not arise from the same Notice of Covered Action (or related action), priority in making these payments will be determined based upon the date that the collections for which the whistleblowers are owed payments occurred. If two or more of these collections occur on the same date, those whistleblowers owed payments based on these collections will be paid on a pro rata basis until sufficient amounts become available in the Fund to pay their entire payments.

(2) Where multiple whistleblowers are owed payments from the Fund based on awards that arise from the same Notice of Covered Action (or related action), they will share the same payment priority and will be paid on a pro rata basis until sufficient amounts become available in the Fund to pay their entire payments.

**§ 240.21F–15  No amnesty.**

The Securities Whistleblower Incentives and Protection provisions do not provide amnesty to individuals who provide information to the Commission. The fact that you may become a whistleblower and assist in Commission investigations and enforcement actions does not preclude the Commission from bringing an action against you based upon your own conduct in connection with violations of the Federal securities laws. If such an action is determined to be appropriate, however, the Commission will take your cooperation into consideration in accordance with its Policy Statement Concerning Cooperation by Individuals in Investigations and Related Enforcement Actions (17 CFR 202.12).

**§ 240.21F–16  Awards to whistleblowers who engage in culpable conduct.**

In determining whether the required $1,000,000 threshold has been satisfied (this threshold is further explained in § 240.21F–10 of this chapter) for purposes of making any award, the Commission will not take into account any monetary sanctions that the whistleblower is ordered to pay, or that are ordered against any entity whose liability is based substantially on conduct that the whistleblower directed, planned, or initiated. Similarly, if the Commission determines that a whistleblower is eligible for an award, any amounts that the whistleblower or such an entity pay in sanctions as a result of the action or related actions will not be included within the calculation of the amounts collected for purposes of making payments.

**§ 240.21F–17  Staff communications with individuals reporting possible securities law violations.**

(a) No person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation, including enforcing, or

653

threatening to enforce, a confidentiality agreement (other than agreements dealing with information covered by § 240.21F–4(b)(4)(i) and § 240.21F–4(b)(4)(ii) of this chapter related to the legal representation of a client) with respect to such communications.

(b) If you are a director, officer, member, agent, or employee of an entity that has counsel, and you have initiated communication with the Commission relating to a possible securities law violation, the staff is authorized to communicate directly with you regarding the possible securities law violation without seeking the consent of the entity's counsel.

INSPECTION AND PUBLICATION OF INFORMATION FILED UNDER THE ACT

**§ 240.24b–1 Documents to be kept public by exchanges.**

Upon action of the Commission granting an exchange's application for registration or exemption, the exchange shall make available to public inspection at its offices during reasonable office hours a copy of the statement and exhibits filed with the Commission (including any amendments thereto) except those portions thereof to the disclosure of which the exchange shall have filed objection pursuant to § 240.24b–2 which objection shall not have been overruled by the Commission pursuant to section 24(b) of the Act.

(Sec. 24, 48 Stat. 901; 15 U.S.C. 78x)

CROSS REFERENCE: For regulations relating to registration and exemption of exchanges, see §§ 240.6a–1 to 240.6a–3.

[13 FR 8214, Dec. 22, 1948]

**§ 240.24b–2 Nondisclosure of information filed with the Commission and with any exchange.**

PRELIMINARY NOTE: Except as otherwise provided in this rule, confidential treatment requests shall be submitted in paper format only, whether or not the filer is required to submit a filing in electronic format.

(a) Any person filing any registration statement, report, application, statement, correspondence, notice or other document (herein referred to as the material filed) pursuant to the Act may make written objection to the public disclosure of any information contained therein in accordance with the procedure set forth below. The procedure provided in this rule shall be the exclusive means of requesting confidential treatment of information required to be filed under the Act.

(b) Except as otherwise provided in paragraphs (g) and (h) of this section, the person shall omit from material filed the portion thereof which it desires to keep undisclosed (hereinafter called the confidential portion). In lieu thereof, it shall indicate at the appropriate place in the material filed that the confidential portion has been so omitted and filed separately with the Commission. The person shall file with the copies of the material filed with the Commission:

(1) One copy of the confidential portion, marked ''Confidential Treatment,'' of the material filed with the Commission. The copy shall contain an appropriate identification of the item or other requirement involved and, notwithstanding that the confidential portion does not constitute the whole of the answer, the entire answer thereto; except that in the case where the confidential portion is part of a financial statement or schedule, only the particular financial statement or schedule need be included. The copy of the confidential portion shall be in the same form as the remainder of the material filed;

(2) An application making objection to the disclosure of the confidential portion. Such application shall be on a sheet or sheets separate from the confidential portion, and shall contain (i) an identification of the portion; (ii) a statement of the grounds of objection referring to, and containing an analysis of, the applicable exemption(s) from disclosure under the Commission's rules and regulations adopted under the Freedom of Information Act (17 CFR 200.80), and a justification of the period of time for which confidential treatment is sought; (iii) a written consent to the furnishing of the confidential portion to other government agencies, offices or bodies and to the Congress; and (iv) the name of each exchange, if any, with which the material is filed.

(3) The copy of the confidential portion and the application filed in accordance with this paragraph (b) shall

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Alan J. Feltoon,<br><br>              Plaintiff,<br><br>    v.<br><br>MG2 Corporation,<br><br>              Defendant. | Case No. 2:15-cv-02032-RAJ<br><br>ORDER |

This matter comes before the Court on Defendant MG2 Corporation's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule Civil Procedure 12(b)(6). Dkt. # 14. For the reasons that follow, the Court **GRANTS in part and DENIES in part** the motion.

## I.      BACKGROUND

MG2 Corporation ("MG2") is an architecture firm that designs retail, mixed-use, master planning, and corporate offices and interiors. Dkt. # 13, at ¶ 12 (Amended Complaint). Costco is one of MG2's largest clients, accounting for more than sixty percent of the company's annual revenues. *Id.* at ¶ 22.

Alan Feltoon began working for MG2 in March 2012 and quickly rose to fill the positions of the Treasurer and Chair of the Finance Committee on MG2's Board of

Directors. *Id.* at ¶ 15. In April 2014, MG2 became aware of a fraudulent scheme in its China office perpetuated by two employees, Jeffrey Fan and Yisen Li. *Id.* at ¶ 17. A preliminary audit uncovered potential violations of U.S. and China law regarding bribery and embezzlement. *Id.* As a result, Mr. Feltoon began a large scale investigation into the apparent corruption in MG2's China office.

During Mr. Feltoon's investigation, he became concerned that MG2 had violated the Foreign Corrupt Practices Act ("FCPA"). *See, generally*, Dkt. # 13 (Amended Complaint). Nonetheless, Mr. Feltoon alleges that Mitch Smith, MG2's CEO and majority owner, pressured him into signing a "Costco Representative/Third Party Certification" that certified compliance with the FCPA. *Id.* at ¶ 28.

In September 2014, Mr. Feltoon reported the findings from his investigation to the Board, including his concerns that MG2 had potentially violated the FCPA. *Id.* at ¶¶ 34, 35. Shortly after delivering the report, Mr. Feltoon claims that Mr. Smith began "marginalizing" him and subsequently decreased personal contact. *Id.* at ¶ 38. Nevertheless, Mr. Feltoon continued to pursue his investigation into FCPA violations in the China office.

In November 2014, Mr. Smith gave Mr. Feltoon a poor performance review, lowering his evaluation from a 4.13 to a 2.75, out of a possible 5.0. *Id.* at ¶ 44. Mr. Feltoon believes Mr. Smith did this in retaliation for Mr. Feltoon's continued investigation into the possible FCPA violations. In December 2014, the Board removed Mr. Feltoon from the Executive Committee and rejected Mr. Feltoon's "recommendation to initiate litigation against Fan or Lee [sic] and declared the China matter 'closed.'" *Id.* at ¶ 49.

In early 2015, Mr. Feltoon traveled with other MG2 colleagues to Vietnam to develop a new project. *Id.* at ¶ 52. The work trip coincided with Tet, and as part of Vietnamese tradition, the MG2 employees were given gifts of money in red envelopes. *Id.* at ¶¶ 54, 55. Mr. Feltoon and one of his colleagues, Walt Geiger, decided that they

would accept the gifts so as not to offend their hosts, and disclose the gifts to MG2 leadership after the trip. *Id.* at ¶¶ 57, 58. Upon his return, Mr. Feltoon claims to have forgotten about the envelope of money, but Mr. Geiger did not; Mr. Geiger reported the gift to MG2 leadership. *Id.* at ¶ 58. Ultimately, MG2 fired Mr. Feltoon for accepting the gift in Vietnam, though Mr. Feltoon pointed out that Mr. Geiger was not terminated for the same action. *Id.* at ¶¶ 59, 62. Mr. Feltoon believes that MG2 used the red envelope as a pretext for his termination. *Id.* at ¶ 61.

Mr. Feltoon brought suit against MG2 for whistleblower retaliation under the Dodd-Frank Act, wrongful discharge in violation of public policy under Washington common law, whistleblower retaliation under Virginia common law, and whistleblower retaliation under the Sarbanes-Oxley Act. Dkt. # 13 (Amended Complaint). MG2 now moves to dismiss all four claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. # 14.

## II.     LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the

Add. 24

document is central to the party's claims and its authenticity is not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Should a court dismiss claims pursuant to Rule 12(b)(6), it should liberally grant leave to amend the pleading "unless it is clear, upon *de novo* review, that the complaint could not be saved by amendment."  *In re Northwest Biotherapeutics Inc. Secs. Litig.*, No. C07-1254RAJ, 2008 U.S. Dist. LEXIS 54028, *9 (W.D. Wash. 2008).

### III.   DISCUSSION

A. Whistleblower Retaliation under 15 U.S.C. § 78u-6(h)(1)

   *1.  Mr. Feltoon is a "whistleblower" under Section 78u-6(h)(1)(A)(iii).*

Both Mr. Feltoon and MG2 acknowledge the split in authority with regard to the Dodd-Frank Act's definition of "whistleblower."  On the one hand, Section 78u-6(a)(6) defines whistleblowers as only those who provide information to the Securities and Exchange Commission ("SEC" or "Commission").  15 U.S.C. § 78u-6(a)(6).  On the other hand, Section 78u-6(h)(1)(A)(iii) protects "whistleblowers" who made "disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*), the Securities Exchange Act of 1934 (15 U.S.C. 78a *et seq.*) ["Exchange Act"], including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule, or regulation subject to the jurisdiction of the Commission."  15 U.S.C. § 78u-6(h)(1)(A)(iii).  Of course, such disclosures are not necessarily required to be made to the SEC; rather, these disclosures could be made to an employer.  *See Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155 (2d Cir. 2015) (finding that Berman reported securities law violations to his employer, not to the SEC).

Most federal courts find that Section 78u-6(h)(1)(A)(iii) extends protection to employees who report internally and not to the SEC.  *See*, *e.g.*, *Connolly v. Remkes*, 2014 U.S. Dist. LEXIS 153439 (N.D. Cal. 2014).  MG2's restriction on Section 78u-

6(h)(1)(A)(iii) belies the purpose of the statute, and this Court rejects such reasoning. This Court agrees with the majority of federal courts on this issue and adopts the more expansive view.

   2.  *Mr. Feltoon sets forth a claim for retaliation under the Dodd-Frank Act.*

   To prove a claim under Section 78u-6(h)(1)(A)(iii), Mr. Feltoon must show that he was discharged because he made disclosures that are required or protected under securities laws.  Mr. Feltoon claims that MG2 retaliated against him for appropriately reporting violations of the FCPA, which is a provision of the Exchange Act.  *See, generally*, Dkt # 13 (Amended Complaint).  MG2 argues that Mr. Feltoon does not explicitly state that these disclosures were required or protected under the Exchange Act, and that he does not show that they were required or protected under any other law, rule, or regulation subject to the jurisdiction of the SEC.  *See* 15 U.S.C. § 78u-6(h)(1)(A)(iii); *see also Nollner v. Southern Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995 (M.D. Tenn. 2012) (stating that the claimant has the burden to show that "the disclosure was made pursuant to a law, rule, or regulation subject to the SEC's jurisdiction; and . . . the disclosure was 'required or protected' by that law, rule, or regulation within the SEC's jurisdiction.").  MG2 argues that Mr. Feltoon's silence on this matter necessarily voids the claim.  *See* Dkt. ## 14, at pp. 24-25; 17, at pp. 11-13.

   The Ninth Circuit has not expressly addressed whether FCPA related disclosures are "required or protected" under the Exchange Act, and very few district courts have fully ventured into this uncertain landscape.  MG2 cites one decision from the Middle District of Tennessee that somewhat addressed this issue.  *See Nollner v. Southern Baptist Convention, Inc.*, No. 3:12-cv-00040, 852 F. Supp. 2d 986 (M.D. Tenn. 2012). In *Noller*, the court found that employees of non-issuers were outside of the SEC's jurisdiction, but nevertheless stated that "it appears that the [Dodd-Frank Act] conceivably could protect FCPA whistleblowers who work for 'issuers,' [but] that is not the circumstance presented here."  *Id.* at 998.  This supports construing FCPA

disclosures as required or protected such that Dodd-Frank whistleblower protection would be triggered. Indeed, in *Wadler v. Bio-Rad Labs., Inc.*, the Northern District of California found that an employee who reported FCPA violations could hold individual defendants liable. 141 F. Supp. 3d 1005, 1024 (N.D. Cal. 2015).[1] Although the court did not expressly address the "required or protected" issue, the result implies that a claim for retaliation under Dodd-Frank related to FCPA disclosures is sound. MG2 offers no proof that FCPA disclosures are exempt from Dodd-Frank protection. Moreover, Mr. Feltoon's Amended Complaint surely put MG2 on notice of the Dodd-Frank claims asserted against it.

MG2 further argues that Dodd-Frank only protects whistleblowers who are employed by "issuers," as defined by the FCPA. Dkt. # 14, at pp. 24-25. The only authority it offers is from a district court outside this circuit. *See Noller*, 852 F. Supp. 2d 986. However, this Court is skeptical that Dodd-Frank restricts its protection in this way, and the provisions of the FCPA that MG2 cites in no way state such a restriction. Importantly, "all of the changes in Dodd-Frank relating to whistleblower protections that were discussed by Congress were aimed at increasing whistleblower protection." *Wadler*, 141 F. Supp. 3d at 1023. This Court will not arbitrarily reduce those protections here.[2]

The Court, therefore, DENIES the motion with regard to this claim.

B. Wrongful Discharge in Violation of Public Policy under Washington Common Law

In his second cause of action, Mr. Feltoon alleges that he was wrongfully discharged by MG2 in violation of public policy under Washington common law. Dkt.

---

[1] Like here, the employer at issue in *Wadler* fell within 15 U.S.C. § 78dd-2. *Wadler*, 141 F. Supp. 3d at 1008.

[2] To be clear, the Court does not find Section 78u-6(h)(1) to be ambiguous. The Court finds that Mr. Feltoon states a claim for retaliation arising out his disclosures under the Exchange Act, namely the FCPA. It appears that MG2 conflated this phrase with the "catch-all" phrase protecting whistleblowers under "any other law, rule or regulation subject to the jurisdiction of the Commission." *See* 15 U.S.C. § 78u-6(h)(1)(A)(iii). However, the Court need not wonder whether Mr. Feltoon's disclosures fall within the "catch-all" because the FCPA is within the Exchange Act.

# 13, ¶¶ 77-84 (Amended Complaint). This common law claim has evolved in Washington to protect at-will employees from employers who attempt to subvert public policy. *Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1141 (Wash. 2015).

There are four recognized scenarios in which an employee may bring a common law claim for wrongful discharge in violation of public policy: "(1) when employees are fired for refusing to commit an illegal act, (2) when employees are fired for performing a public duty or obligation, such as serving jury duty, (3) when employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims, and (4) when employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing." *Rose*, 275 P.3d at 1147. "Under each scenario, the plaintiff is required to identify the recognized public policy and demonstrate that the employer contravened that policy by terminating the employee." *Id.* at 1142. Here, MG2 concedes that Washington courts recognize the FCPA as a mandate of public policy. Dkt. # 14, at p. 17.

The Amended Complaint clearly sets forth facts that could signal MG2 violated the FCPA, and Mr. Feltoon claims that his discharge was premised on his exposing this misconduct internally.[3] At this stage, the Court finds that Mr. Feltoon has adequately stated a claim for wrongful discharge based on his internal reporting of MG2's FCPA violations.[4] "The burden now shifts to [MG2] to establish that [Mr. Feltoon's] dismissal was for other reasons." *Rose*, 358 P.3d at 1147.[5] Accordingly, the Court DENIES the motion with regard to this claim.

---

[3] In his Amended Complaint, Mr. Feltoon alleges that he falls squarely within the first and last categories. Dkt. # 13, at ¶81 (Amended Complaint). Though, in his Opposition, Mr. Feltoon claims to fall within the last category. Dkt. # 17, at p. 14 ("Here, Feltoon's case falls squarely within the fourth scenario . . . ."). The Court will assume that Mr. Feltoon waives his claim to the extent that he alleges he was fired for refusing to commit an illegal act.

[4] MG2 cites no authority for its claim that Mr. Feltoon faces a "demanding standard" to prove his wrongful discharge claim at this stage. The Court will not take this opportunity to create a new pleading standard for this common law claim.

[5] Because Mr. Feltoon's claim fits squarely within one of the four categories, the Court need not analyze the four-part Perritt framework. *See Rose*, 358 P.3d at 1147.

C.  Whistleblower Retaliation under Virginia Common Law

Mr. Feltoon agrees that his Virginia law claim should be dismissed.  Dkt. # 17, at p. 16.  Accordingly, the Court GRANTS the motion with regard to this claim.

D.  Whistleblower Retaliation under 18 U.S.C. § 1514A

Mr. Feltoon's fourth cause of action alleges retaliation under the Sarbanes-Oxley Act ("SOX"), codified in Section 806 of SOX, at 18 U.S.C. § 1514A.  Section 806 provides "whistleblower protection" for persons currently or formerly employed by certain companies regulated by the SEC, including "any officer, employee, contractor, subcontractor, or agent of such company . . . ." 18 U.S.C. § 1514A(a)(1); 29 C.F.R. § 1980.101(g); *Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 996 (9th Cir. 2009).  Under SOX, a company may not retaliate against an employee who reports or provides investigators with information regarding company conduct that the employee believes to be fraudulent or unlawful.  18 U.S.C. § 1514A(a).  To initiate a SOX claim, a claimant must first file his complaint with the Secretary of Labor.  18 U.S.C. § 1514A(b)(1)(A). If the Secretary does not issue a final decision within 180 days of the filing date, the complainant may bring an action in United States District Court.  18 U.S.C. § 1514A(b)(1)(B).

A complainant alleging unlawful retaliation under SOX must make a prima facie showing that: "(i) [t]he employee engaged in a protected activity; (ii) [t]he respondent knew or suspected that the employee engaged in the protected activity; (iii) [t]he employee suffered an adverse action; and (iv) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2); *see also Van Asdale*, 577 F.3d at 996.  "A prima facie case does not require that the employee conclusively demonstrate the employer's retaliatory motive."  *Coppinger-Martin v. Solis*, 627 F.3d 745, 750 (9th Cir. 2010).

As an initial matter, MG2 contends that Mr. Feltoon is not a covered employee because MG2 is a private contractor and any alleged acts of fraud were committed, if at

all, against Costco, a public company, rather than by or on behalf of Costco.  Dkt. # 14, at pp. 13-16.  Mr. Feltoon disagrees, arguing that neither the statute nor the Supreme Court support this stance.  Dkt. # 17, at p. 5.  Both parties rely on *Lawson v. FMR LLC* for their opposing viewpoints on whether Section 806 applies in this case.  134 S. Ct. 1158 (2014).

In *Lawson*, the Supreme Court concluded that the protections set forth in Section 806 extend to employees of private contractors "who suspect fraud involving the public companies with whom they work."  *Lawson*, 134 S. Ct. at 1170.  The limitations to this ruling appear to be that 1) the employee of the private contractor must assert a claim based on allegations related to shareholder fraud, 2) the relationship between the contractor and the public company must not be fleeting, and 3) the allegations must be related to "the contractor fulfilling its role as a contractor for the public company, not the contractor in some other capacity."  *Id.* at 1172-73.  MG2 claims that *Lawson* is further limited in that the alleged fraud by the contractor must be committed for or on behalf of the public company rather than against the public company.  Dkt. # 14, at pp. 13-16 (*citing Gibney v. Evolution Mktg. Research, LLC*, 25 F. Supp. 3d 741, 747 (E.D. Pa. 2014).  MG2 further cites *Anthony v. Northwest Mutual Life Insurance Company* to support its claims that a private contractor must be providing services to the public company, and the alleged fraud must be committed by the public company or through the contractor.  130 F. Supp. 3d 644 (N.D.N.Y. 2015).  MG2 encourages the Court to adopt a narrow reading of *Lawson*, in line with the few districts outside this circuit that have already done so.[6]

In deciding whether *Lawson* opened the door for complainants like Mr. Feltoon to bring suit under Section 806, the Court finds it helpful to review the Administrative Review Board's opinion on the issue.  *See Spinner v. David Landau & Assoc., LLC*, No. 10-111 etc., ALJ No. 2010-SOX-029, 2012 DOL Ad. Rev. Bd. LEXIS 48 (May 31,

---

[6] At the time of this ruling, it does not appear that the Ninth Circuit has taken on this issue.

2012).[7] In *Spinner*, the ARB analyzed the history leading to the creation of Section 806 of SOX, noting the prominent place that the Enron disaster played in its enactment. *Id.* The ARB recounted how much of Enron's deceit was perpetuated with the assistance of its auditors. *Id.* at 23-25. The Supreme Court agreed with this assessment, finding that "contractors and subcontractors, including the accounting firm Arthur Andersen, participated in Enron's fraud and its coverup." *Lawson*, 134 S. Ct. at 1162. If Section 806 did not reach employees of contractors, the Supreme Court found that "[t]here would be a huge hole . . . : Contractors' employees would be disarmed; they would be vulnerable to retaliation by their employers for blowing the whistle on a scheme to defraud the public company's investors, even a scheme engineered entirely by the contractor." *Id.* at 1168.

Common to *Lawson*, *Anthony*, and *Spinner* is the idea that the alleged fraud was done during, and generally related to, the contractor's work for the public company, and the fraud was related to the public company in a way that one could ascertain a direct effect on the shareholders. *Anthony* illustrates this scenario. There, the plaintiff uncovered compliance issues perpetuated by her own company, a private contractor, and its employees. *Anthony*, 130 F. Supp. 3d at 647. Though she reported the practices to the public company with which her company was contracting, the practices did not implicate the public company any more than it did other clients. *Id.* In *Anthony*, therefore, the court found that "[a] private company's fraudulent practices do not become subject to § 1514A merely because that company incidentally has a contract with a public company." *Id.* at 652.

Similar to *Anthony*, the noncompliant practices uncovered at MG2 did not implicate Costco beyond the incidental matter of the certification. Mr. Feltoon's Amended Complaint clearly sets forth facts that could alert MG2 to its own potentially

---

[7] The Supreme Court cited *Spinner* in *Lawson*, stating in a footnote that it agreed with the ARB's conclusion that affords protection to a contractor's employees. *Lawson*, 134 S. Ct. at 1165 n.6.

fraudulent practices, but these practices are removed from any contracting work done for Costco.  Said another way, the only link between MG2's alleged fraud and Costco is Costco's requirement that all of its contractors certify compliance with the FCPA.  The Court finds, therefore, that MG2's actions are too attenuated for Section 806 to apply. Because the Court finds that this claim does not apply, any further analysis is moot. Accordingly, the Court GRANTS the motion with regard to this claim.

## IV.     CONCLUSION

For all the foregoing reasons, the Court GRANTS in part and DENIES in part MG2's motion to dismiss.  Dkt. # 14.

Dated this 30th day of September, 2016.

_____
The Honorable Richard A. Jones
United States District Judge

**Add. 32**